Kenneth L. RONEY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 20A04–0703–CR–129.

Court of Appeals of Indiana.

Aug. 24, 2007.

Kenneth R. Martin, Goshen, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Scott L. Barnhart, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

### Case Summary and Issues

Following a guilty plea, Kenneth Roney appeals his sixty-five-year sentence for murder, a felony. Roney raises two issues, which we restate as whether the trial court improperly found and weighed the mitigating and aggravating circumstances and whether his sentence is inappropriate given his character and the nature of the offense. We affirm, concluding that although the trial court found improper aggravating circumstances and failed to find a mitigating circumstance, the sixty-five-year sentence is still proper, and that the sentence is also not inappropriate.

### Facts and Procedural History

On August 21, 2001, Roney, along with Robert Harper, Timothy Gaines, and Amber Lace drove to Chris Brown's apartment, where Lace was also living at the time. Although the record is not entirely clear, it appears that either Brown owed Harper money for drugs, or the group was upset with Brown for his treatment of Lace. Brown was not there when the group arrived, but they decided to wait for

him. The group attempted to break into Brown's safe, and discussed various plans of what to do to Brown. When Brown returned, he saw Roney, Harper, and Gaines, and pulled out a handgun. Roney, Harper, and Gaines wrestled with Brown, and at some point the gun fired. During the course of the struggle, someone hit Brown with a golf club. The group then tied Brown up and put him on a bed. Shortly thereafter, a police officer arrived at the apartment in response to a 911 call regarding the gunshot. Harper told Roney to make Brown be quiet, and Roney hit Brown with a fire extinguisher. Brown died as a result of the injuries sustained during the beating.

On August 22, 2001, the State charged Roney with felony murder. On September 27, 2001, the State charged Roney with murder. That same day, pursuant to a plea agreement, Roney pled guilty to murder, with sentencing left to the trial court. In exchange, the State agreed to drop the felony murder charge and not file any additional charges relating to the incident. On December 6, 2001, the trial court held a sentencing hearing and sentenced Roney to sixty-five years, all executed. The trial court's sentencing order contains the following statement regarding mitigating and aggravating circumstances:

> The Court finds as mitigating circumstances the Defendant's age of 25 years; the fact that the Defendant accepted responsibility for his actions; the fact that the Defendant is a drug addict; and the fact that the Defendant in open court apologized to the mother of the victim for his criminal conduct. The Court finds aggravating circumstances to be as follows: The Defendant's prior felony conviction of Forgery and the fact that the Defendant was on good behavior previously for a Marijuana case for a period of one (1) [year] but that the Defendant continued using drugs while

on good behavior probation or up to and including the time of the commission of this offense. The Court further finds as a aggravating circumstance the fact that the Defendant committed this offense while on drugs, to wit: Ecstasy and Methamphetamine. All of said aggravating circumstances listed by the Court herein thus far indicate the Defendant's disdain for the authority of the Court and the laws of this state. The Court further finds as an aggravating circumstance the fact that the Defendant continued to use drugs in spite of his criminal convictions. The Court further finds that the Defendant inflicted multiple injuries upon the victim in this case and that the Defendant together with his co-defendants committed multiple crimes upon the victim by beating him with a golf club, tying [sic] him up and striking him in the back and head with a fire extinguisher. The Court further finds that all of said criminal offenses resulting in the death of the victim were committed while an infant child was in the apartment and the Defendant herein and others were under the influence of drugs and may have used drugs while said infant child was present. The Court finds said violence in the presence of a minor child created a particularly dangerous environment for the infant child. The Court further finds as an aggravating circumstance the fact that the Defendant used a fire extinguisher to beat the victim to avoid detection and apprehension and further that the Defendant herein wiped his fingerprints off with his shirt so that [he] could further escape detection. The Court further finds that the Defendant has used drugs since age 15 indicating his contempt for the law and the authority of the court with respect to such matters. The Court further finds that the Defendant

and others committed multiple offenses upon the victim both charged and uncharged and could have been charged with the offenses of Robbery and Criminal Confinement by virtue of tying [sic] up the Defendant [sic] and beating him when taking property from him by the use of force. The Court further finds that in light of the particularly violent nature of the crime the Defendant is in need of rehabilitation that can only be provided in a penal facility. The Court further finds as an aggravating circumstance the fact that probation and a suspension of sentence has been ineffective in the past to cause the Defendant to cease from committing criminal behavior. The Court further finds as an aggravating circumstance the fact that the Defendant herein sought no medical help or attention for the victim after the infliction of injuries upon him including the multiple injuries from multiple weapons. The Court finds this to be particularly callous on the part of the Defendant herein. The Court further finds as an aggravating circumstance the fact that the Defendant and the victim were not acquainted with each other and the Defendant and other co-defendants were lying in wait for the victim. The Court further finds that imposition of less than an enhanced sentence would depreciate the seriousness of the offenses based upon the facts described in this case.

Appellant's Appendix at 161–63.

On June 5, 2006, Roney filed a petition for permission to file a belated appeal. On February 5, 2007, the trial court granted this petition. Roney now appeals.

*Discussion and Decision*

## I. Aggravators and Mitigators

■ Under the presumptive sentencing scheme,[1] if the trial court imposes a sentence in excess of the statutory presumptive sentence, it must identify and explain all significant aggravating and mitigating circumstances and explain its balancing of the circumstances. *Rose v. State*, 810 N.E.2d 361, 365 (Ind.Ct.App.2004). We will not modify the trial court's sentence unless it is clear that the trial court's decision was clearly "against the logic and effect of the facts and circumstances before the court." *Id.*

■ Even when we conclude that the trial court abused its discretion in finding aggravating circumstances or failing to find mitigating circumstances, we will not necessarily reverse the sentence. Instead, "we have the option to remand to the trial court for a clarification or new sentencing determination, to affirm the sentence if the error is harmless, or to reweigh the proper aggravating and mitigating circumstances independently at the appellate level." *Cotto v. State*, 829 N.E.2d 520, 525 (Ind.2005).

### A. Aggravating Circumstances

#### 1. Applicability of *Blakely* to Roney's Case

■ Roney argues that the trial court's finding and consideration of several factors violated his Sixth Amendment rights under *Blakely v. Washington*, 542 U.S. 296, 303–04, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) (holding that where facts are used to increase a defendant's sentence beyond a statutory maximum, the facts must be either admitted by the defendant or found

1. Our legislature amended our sentencing statutes to replace "presumptive" sentences with "advisory" sentences, effective April 25, 2005. *Weaver v. State*, 845 N.E.2d 1066, 1070 (Ind.Ct.App.2006), *trans. denied.* Because Roney committed his crime before the effective date, the presumptive sentencing scheme applies. *See Gutermuth v. State*, 868 N.E.2d 427, 431 n. 4 (Ind.2007).

by a jury beyond a reasonable doubt). Here, Roney's sentence was entered before *Blakely* was decided, and he filed his appeal as a belated appeal. Therefore, his sentence is not subject to *Blakely. Gutermuth*, 868 N.E.2d at 428.[2] The trial court's consideration of aggravators not admitted by him was not improper.

■ Although *Blakely* does not apply, we will still conclude that the trial court improperly found an aggravator if that circumstance has no support in the record. *See Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind.2007); *cf. Gardner v. State*, 270 Ind. 627, 638, 388 N.E.2d 513, 520 (1979) ("A sentence based on materially untrue assumptions violates due process."); *Brooks v. State*, 555 N.E.2d 1348, 1350 (Ind.Ct.App.1990) ("[The defendant] had a right to have his sentence based on accurate information").

### 2. Roney's Substance Abuse

■ Roney concedes that the trial court properly found as an aggravating circumstance that Roney had used drugs throughout his life. A history of substance abuse may constitute a valid aggravating factor. *See Iddings v. State*, 772 N.E.2d 1006, 1018 (Ind.Ct.App.2002), *trans. denied*. We conclude that the trial court properly found this aggravating circumstance.

On the other hand, Roney argues, and the State concedes, that the trial court improperly found as an aggravating circumstance that Roney used marijuana while he was on "good behavior." The record indicates that Roney admitted to

drug abuse, but denied using drugs while on "good behavior." The State introduced no evidence to the contrary. Therefore, we agree that the trial court abused its discretion in finding this aggravating circumstance.

### 3. Need for Rehabilitation in a Correctional Facility

■ Roney also argues that the aggravating factor of Roney's need for treatment in a correctional facility was improper. As long as the trial court explains why a defendant requires rehabilitation in a correctional facility for a period in excess of the presumptive sentence, this finding may constitute a proper aggravating circumstance. *Armstrong v. State*, 742 N.E.2d 972, 980–81 (Ind.Ct.App.2001). Here, the trial court sufficiently explained Roney's need for rehabilitation in a penal facility by noting the violent nature of the crime. *See Ajabu v. State*, 722 N.E.2d 339, 343–44 (Ind.2000) (holding the explanation of brutal nature of crimes and ages of victims constituted sufficient support for aggravating circumstance of defendant's need for correctional treatment in a penal facility). Also, we have previously held that the trial court may properly find that the defendant is in need of rehabilitation in a penal facility even without providing a specific reason where the trial court "engage[d] in a lengthy and detailed discussion of considerations for sentencing and actual aggravating factors." *Hornbostel v. State*, 757 N.E.2d 170, 184 (Ind.Ct.App. 2001), *trans. denied*. Based on the trial court's specific explanation and extensive sentencing statement, we cannot say that

**2.** Roney filed his appellate brief before *Gutermuth* was decided, at which point it was not clear whether *Blakely* applied to cases such as his. *Compare Gutermuth v. State*, 848 N.E.2d 716 (Ind.Ct.App.2006), *trans. granted, opinion vacated in relevant part*, 868 N.E.2d 427 (holding that *Blakely* applies retroactively to those

who have not exhausted their right to file a belated appeal); *with Robbins v. State*, 839 N.E.2d 1196, 1199 (Ind.Ct.App.2005) (holding that *Blakely* does not apply retroactively to defendants whose direct appeal was not pending when *Blakely* was decided).

the trial court abused its discretion in finding this aggravating circumstance.

### 4. Depreciation of the Seriousness of the Offense

■ Next, Roney argues that finding that imposition of a less than enhanced sentence would depreciate the seriousness of the offense was improper. We disagree. Our supreme court has explained that "it is not error to enhance a sentence based upon the aggravating circumstance that a sentence less than the enhanced term would depreciate the seriousness of the crime committed." *Mathews v. State,* 849 N.E.2d 578, 590 (Ind.2006); *see also Walter v. State,* 727 N.E.2d 443, 447 (Ind. 2000).[3] The trial court's finding of this aggravating circumstance was not improper.

### 5. Uncharged Misconduct

■ Roney next argues that the trial court improperly considered the multiple injuries inflicted upon Brown and the fact that the State could have charged Roney with more crimes, namely robbery and criminal confinement. Roney argues first that such considerations violate the prohibition on double jeopardy and next that such considerations violate the plea agreement, under which the State agreed to file no additional charges stemming from the incident. Before addressing these two arguments, we note that the trial court is permitted to consider uncharged misconduct when enhancing a sentence. *Singer v. State,* 674 N.E.2d 11, 14–15 (Ind.Ct.App. 1996); *see Ridenour v. State,* 639 N.E.2d 288, 297–98 (Ind.Ct.App.1994) ("The fact that Ridenour committed other, uncharged, incidents of molestation with the same victim is a valid factor to consider in aggravation.").

■ With regard to the trial court's comment that Roney, along with his cohorts, inflicted multiple injuries through the use of multiple weapons, we conclude that this finding is merely a comment on the nature and circumstances of the crime. The trial court never mentioned any possible crime with which Roney could have been charged as a result of these multiple injuries, and instead appears to be commenting on the brutal nature of the crime. A trial court may properly refer to the brutal nature of a murder as an aggravating circumstance. *See Vasquez v. State,* 762 N.E.2d 92, 98 (Ind.2001); *Biehl v. State,* 738 N.E.2d 337, 340 n. 4 (Ind.Ct. App.2000), *trans. denied.*

■ In regard to Roney's double jeopardy argument, the trial court found that the State could have charged Roney with robbery, as part of the reason for the beating was to obtain money and drugs from Brown. Double jeopardy is not a bar to convictions of robbery as a Class C felony and murder stemming from the

---

3. The State concedes in its brief that this aggravating circumstance was improper, citing *Bacher v. State,* 686 N.E.2d 791, 801 (Ind. 1997). In *Bacher,* our supreme court held that it is improper for the trial court to use the aggravating circumstance " 'that imposition of a reduced sentence would depreciate the seriousness of the crime' " when the trial court does not consider imposing a reduced sentence. *Id.* However, here, the aggravating circumstance was that imposition of a *less than enhanced* sentence would depreciate the seriousness, not that imposition of a *reduced* sentence would depreciate the seriousness. Therefore, there did not need to be evidence that the trial court was considering a reduced sentence. *See Mathews,* 849 N.E.2d at 589–90 ("[The defendant] first argues that this Court has consistently held that the 'depreciate the seriousness of the offense' be used as an aggravating factor only when the court is considering the imposition of a shorter sentence than the presumptive. This is not an accurate statement."); *Walter,* 727 N.E.2d at 447.

same incident. *Logan v. State*, 729 N.E.2d 125, 137 (Ind.2000). The trial court also noted that the State could also have charged Roney with criminal confinement. When the group bound Brown without his consent, the elements of criminal confinement were satisfied. *See* Ind.Code § 35–42–3–3. Roney's subsequent act of intentionally hitting Brown with the fire extinguisher, thereby causing Brown's death, constituted a use of force separate from that used in confining Brown. *See Grafe v. State*, 686 N.E.2d 890, 895 (Ind.Ct.App. 1997), *trans. denied* ("In restraining [the victim] in her bed, Grafe employed force beyond that inherent in the actions forming the basis of the attempted murder conviction. Therefore, the evidence was sufficient to support a separate conviction for confinement." (citation omitted)). Therefore, the State could have charged Roney with crimes in addition to murder.

■ However, we agree that the trial court's consideration of these uncharged crimes violates the plea agreement, under which the State agreed to file no additional charges arising out of the incident. If a trial court accepts a plea agreement under which the State agrees to drop or not file charges, and then uses facts that give rise to those charges to enhance a sentence, it in effect circumvents the plea agreement. *See Farmer v. State*, 772 N.E.2d 1025, 1027 (Ind.Ct.App. 2002) (noting that if a defendant is sentenced more harshly based upon facts comprising the dismissed charges, the defendant does not receive the full benefit of the plea agreement); *cf. Carlson v. State*, 716 N.E.2d 469, 473 (Ind.Ct.App.1999) (where the defendant pled guilty to dealing cocaine as a Class B felony, and the State dropped the charge of dealing cocaine as a Class A felony, "[t]he trial court could not circumvent the plea agreement by sentencing defendant using the distinguishing element as an aggravator"). Therefore, we conclude that the trial court abused its discretion by finding the aggravating circumstances of the uncharged crimes of robbery and criminal confinement, and considering the factual circumstances supporting these potential charges.

### 6. Acts to Avoid Detection

■ Roney does not explicitly argue that the trial court's findings that Roney hit Brown with the fire extinguisher to silence Brown and avoid detection, and subsequently wiped the extinguisher to erase to avoid detection constituted improper aggravators. However, he states that he as been unable to find authority indicating that such findings do constitute proper aggravators, and the State concedes that the aggravating circumstance that Roney hit Brown with the extinguisher to avoid detection is improper. Therefore, we will address the issue.

■ Acts of a defendant taken to avoid detection or conceal facts relating to the crime constitute valid aggravating circumstances. *See Spears v. State*, 735 N.E.2d 1161, 1167 (Ind.2000); *Nash v. State*, 754 N.E.2d 1021, 1027 (Ind.Ct.App. 2001), *trans. denied; Cook v. State*, 612 N.E.2d 1085, 1089–90 (Ind.Ct.App.1993). Trial courts may properly discuss acts taken to conceal a crime as part of a general discussion of why the nature and circumstances of the crime constitutes an aggravating circumstance sufficient to enhance a sentence. *See Mann v. State*, 742 N.E.2d 1025, 1027 (Ind.Ct.App.2001), *trans. denied, disapproved of on other grounds, Childress v. State*, 848 N.E.2d 1073 (Ind. 2006). Roney admittedly hit Brown with the fire extinguisher because he was making noises and the group did not want a police officer, who had arrived at the apartment complex, to hear him. We conclude that the trial court properly found

the facts that Roney delivered the apparent fatal blows in an effort to silence Brown and avoid detection and that he subsequently wiped his fingerprints from the fire extinguisher in a further attempt to avoid responsibility for his actions as aggravating circumstances relating to the nature and circumstances of the crime.

### 7. Failure to Seek Medical Treatment

The fact that a defendant had an opportunity to seek medical treatment for a victim whom he eventually killed can properly be considered as an aggravating circumstance going to the nature and circumstances of the crime. *See Gardner,* 270 Ind. at 635–36, 388 N.E.2d at 518. Roney argues that the record does not support this circumstance, as "[i]t is hard to see how Roney could have obtained any assistance while on premises controlled by Harper, and being unable to leave the premises for fear of being shot, was not in a position to secure assistance in this manner." Appellant's Br. at 14. However, although Roney testified at the guilty plea hearing that at one point Harper had held Brown's gun and told him, Lace, and Gaines that they were not to leave, Roney's testimony also indicates that at one point Harper attempted to give Roney the gun. Roney's testimony also indicates that although he wanted to leave Brown's apartment, he wanted to do so to avoid being found by the police, not to seek medical assistance for Brown. In sum, we conclude that the record supports the trial court's finding that Roney's failure to seek medical assistance constitutes a valid aggravating circumstance as it relates to the nature and circumstances of the crime.

### 8. Fact that Roney Was Previously Unacquainted with Brown

The trial court found as an aggravating circumstance the fact that Roney was not acquainted with Brown. We begin by noting the fact that a defendant's "position of trust" relationship with the victim is a statutorily identified aggravating circumstance. *See* Ind.Code 35–38–1–7.1(a)(8). Even in the absence of this special relationship, we have found the fact that a defendant had a close relationship with the victim to constitute a valid aggravating circumstance. *See Johnson v. State,* 845 N.E.2d 147, 151 (Ind.Ct.App.2006), *trans. denied* (victim was child of defendant's neighbor); *Reyes v. State,* 828 N.E.2d 420, 424 (Ind.Ct.App.2005), *aff'd in relevant part,* 848 N.E.2d 1081 (victim was defendant's friend and defendant used friendship to gain access to victim's home); *cf. Carrico v. State,* 775 N.E.2d 312, 315–16 (Ind.2002) (trial court's comment that victim was defendant's friend and that defendant abused the victim's trust when he murdered him was a valid factor going to the nature and circumstances of the crime).

On the other hand, relationships less personal in nature do not constitute aggravating circumstances. Our supreme court, in holding the fact that the defendant was the victim's neighbor was not a valid aggravating circumstance, explained that "[b]eing a neighbor may encompass a higher degree of societal relationship and philial responsibility that that of a 'stranger' or 'acquaintance,' but such a relationship, without more, is not a 'position of trust' warranting its consideration as an aggravating circumstance." *Edgecomb v. State,* 673 N.E.2d 1185, 1198 (Ind.1996). This explanation implies that the fact that a defendant was not acquainted with the victim, without more, also does not constitute a valid aggravating circumstance.

We do not mean to imply that a trial court may never consider the lack of a prior relationship between a defendant and his or her victim. In fact, we recognize

that when crimes are committed against random victims, a trial court may properly find that the nature and circumstances of the crime constitutes an aggravating circumstance. *See Henson v. State,* 707 N.E.2d 792, 795 (Ind.1999) (trial court properly considered the aggravating circumstance "that the crime was particularly violent—the victim was a defenseless victim of a random car jacking, left to die 'in her own blood' "); *Sherwood v. State,* 702 N.E.2d 694, 700 (Ind.1998) (trial court properly applied aggravating circumstance that crime was heinous, where defendant and his companions robbed a random man who was washing his car). However, although Roney and Brown were not acquainted, Brown was not a random victim, as he knew Lace and Harper, and the group committed the acts of violence against Brown for reasons personal to Brown. Thus, this is not a case where the defendant's crime demonstrates his propensity to commit random acts of violence against arbitrary members of society.

 Trial courts clearly are allowed to consider various circumstances relating to the nature of the crime. However, it seems counterintuitive to say that: 1) a position of trust or close relationship constitutes an aggravating circumstance; and 2) an attenuated "neighbor" relationship with a victim does not constitute an aggravating circumstance; but 3) a relationship such as the one in this case, where the defendant and victim were unacquainted, but the victim was not chosen at random, constitutes an aggravating circumstance. We see no compelling reason to find the mere fact that Roney had not personally met Brown before committing this crime to be a significant aggravating circumstance surrounding the crime. Therefore, we agree with Roney that to the extent the fact that he was unacquainted with Brown could be considered a valid aggravator, in this case it was worthy of insignificant weight.

### 9. Criminal History

 Roney argues that his criminal history, consisting of a single felony conviction for forgery,[4] should not be considered a significant aggravating circumstance. Although a criminal history undoubtedly constitutes a valid aggravating circumstance in the vast majority of cases, such is not always the case. In *Wooley v. State,* 716 N.E.2d 919 (Ind.1999), the defendant, convicted of murder, had a criminal history of one conviction for driving while intoxicated. Our supreme court held that "a criminal history comprised of a single, nonviolent misdemeanor is not a significant aggravator in the context of a sentence for murder." *Id.* at 929. As it explained:

> Our decisional law requires that the trial courts identify all "significant" aggravating circumstances. Significance varies based on the gravity, nature and number of prior offenses as they relate to the current offense. Therefore, a criminal history comprised of a prior conviction for operating a vehicle while intoxicated may rise to the level of a significant aggravator at a sentencing hearing for a subsequent alcohol-related offense. However, this criminal history

4. Roney's pre-sentence report indicates that Roney was also convicted of criminal trespass. There was some discussion at the sentencing hearing as to whether Roney had actually been convicted of criminal trespass, and the trial court stated that it would find the conviction to be an aggravating circumstance "[f]or the time being." Tr. at 55. As the trial court did not mention the criminal trespass conviction in its sentencing order, we will assume that it ultimately declined to find that Roney had been convicted of criminal trespass.

does not command the same significance at a sentencing hearing for murder: *Id.* at 929 n. 4. Based on our supreme court's holding in *Wooley,* we conclude that a single nonviolent conviction, albeit a felony, is not a significant aggravator in the context of a sentence for murder. Although we by no means condone the act of forgery, such a crime, committed solely against another's property and carrying no inherent risk to another's health or life,[5] is dissimilar in nature and gravity to murder.

### 10. Lying in Wait

Roney makes no argument regarding the trial court's finding that he laid in wait for Brown to return home before committing the crime. The trial court had ample evidence before it from which to conclude that Roney had lain in wait for Brown. Such a finding is a valid aggravating circumstance.[6] *Kingery v. State,* 659 N.E.2d 490, 497 (Ind.1995).

### B. Mitigating Circumstances

Although the trial court has an obligation to consider all mitigating circumstances identified by a defendant, it is within the trial court's sound discretion whether to find mitigating circumstances. *Newsome v. State,* 797 N.E.2d 293, 301 (Ind.Ct.App.2003), *trans. denied.* We will not remand for reconsideration of alleged mitigating factors that have debatable nature, weight, and significance. *Id.* The trial court need not give a mitigating factor the same weight as would the defen-

dant. *Smallwood v. State,* 773 N.E.2d 259, 263 (Ind.2002).

### 1. Support From Family and Community

Roney argues that the support shown by his family, friends, and members of the community, as evidenced by numerous letters written to the trial court on his behalf, constitutes a significant mitigating circumstance. The trial court discussed these letters at the sentencing hearing, and found it "obvious ... you have some people that care very much for you." Tr. at 49. However, the trial court also noted that most of these letters contain the "theme ... that [Roney] did not really commit this offense, someone else did." *Id.* The trial court reasoned that these people either "cannot believe that you would do something as serious as you have done ... [or] they simply do not know what it is that you have done." *Id.* at 50. It is apparent from the trial court's discussion that it considered this support and found it to be of insignificant weight. We conclude that the trial court did not abuse its discretion in so finding.

### 2. Hardship on Family

With regard to the hardship imposed on Roney's dependents, a trial court "is not required to find a defendant's incarceration would result in undue hardship on his dependents." *Davis v. State,* 835 N.E.2d 1102, 1116 (Ind.Ct.App.2005), *trans. denied.* Indeed, "[m]any persons convicted of serious crimes have one or

---

**5.** Indeed, although the crime of driving while intoxicated constitutes a misdemeanor when no other circumstances are present, *see* Ind. Code § 9–30–5–1, the crime involves more of a risk to and disregard for human life than does the typical act of forgery.

**6.** We note that lying in weight is a statutory aggravator that the State may use to seek the

death penalty or life imprisonment. Ind.Code § 35–50–2–9(b)(3). Whether Roney's actions prior to the encounter with Brown were sufficient to constitute lying in wait for purposes of the death penalty statute is immaterial. *Taylor v. State,* 681 N.E.2d 1105, 1111 (Ind. 1997).

more children and, absent special circumstances, trial courts are not required to find that imprisonment will result in an undue hardship." *Dowdell v. State*, 720 N.E.2d 1146, 1154 (Ind.1999). Also, although Roney testified that he paid child support, he failed to demonstrate the degree to which his child relies upon him for this support. *See Anglin v. State*, 787 N.E.2d 1012, 1018 (Ind.Ct.App.2003), *trans. denied* (trial court did not abuse its discretion in not finding mitigating circumstance where record did not reveal the degree of daughter's reliance upon defendant). Roney has simply failed to demonstrate that any hardship suffered by his children is "undue" in the sense that it is any worse than that suffered by any children whose father is incarcerated. *See Nicholson v. State*, 768 N.E.2d 443, 448 n. 13 (Ind.2002). The trial court did not abuse its discretion in not finding undue hardship to be a mitigating factor.

### 3. Lesser Role in the Offense

 Roney argues that the trial court improperly overlooked the mitigating circumstance that he was not the main actor in the murder of Brown, and that "[t]he leader was Ron Harper." Appellant's Br. at 16. Roney's counsel argued that Roney's lesser role in the events leading up to Brown's killing warranted a lesser sentence, but the trial court did not discuss this lesser role either at the sentencing hearing or in its sentencing statement. Evidence that the defendant was not the person who initiated or planned the crime may constitute a mitigating circumstance. *See Sensback v. State*, 720 N.E.2d 1160, 1164 (Ind.1999); *Widener v. State*, 659 N.E.2d 529, 534 (Ind.1995). In *Widener*, our supreme court found it to be

a significant mitigating circumstance that "[a]lthough defendant actively engaged in the murder and robbery, even the State does not dispute that the plan was initiated by Lozier and formulated primarily by Davis." 659 N.E.2d at 534. Similarly, Roney and the State agree, and the record indicates, that Roney was not actively involved in either initiating the trip to Brown's apartment or in formulating the plan that led to Brown's death. Therefore, based on our supreme court's holding in *Widener*, we conclude that the trial court abused its discretion in overlooking this mitigating circumstance.

### C. Weighing of the Circumstances

As discussed above, because we concluded that the trial court found improper aggravators and overlooked mitigators, we have the option to reweigh the proper circumstances. As Roney has also argued that the trial court abused its discretion in its weighing of the aggravators and mitigators, we find it efficient to take this option.

Here, the trial court found six valid and significant [7] aggravating circumstances: Roney's history of substance abuse; his need for rehabilitation that can only be provided by a penal facility based on the brutal nature of the crime; imposition of a less than enhanced sentence would depreciate the seriousness of the crime; his acts taken to avoid detection; his failure to seek medical help for the victim when given the opportunity; and the fact that he had lain in wait for the victim. Five significant mitigating circumstances also existed: Roney's lesser role in the planning of the offense; his age of twenty-five; his apology to Brown's mother; his addiction to drugs; [8] and his acceptance of responsibility.

---

**7.** As discussed above, Roney's criminal history and the fact that he was previously unacq-
uainted with the victim do not constitute significant aggravators in this case.

**8.** We note that the trial court found the fact

Roney argues that his acceptance of responsibility, as demonstrated by his guilty plea, should be given heavier weight and should preclude a maximum sentence.[9] We recognize that remorse is a substantial mitigating circumstance, and that Roney accepted responsibility by pleading guilty. "Where the State reaps a substantial benefit from the defendant's act of pleading guilty, the defendant deserves to have a substantial benefit returned." *Sensback*, 720 at 1164. However, when a defendant has already received a benefit in exchange for the guilty plea, the weight of a defendant's guilty plea is reduced. *See id.* at 1165. As discussed above, Roney could have been charged with crimes in addition to murder, and therefore was extended a substantial benefit. We also recognize that substantial evidence existed against Roney, as he was found in the apartment with Brown's dead body and all involved had given incriminating statements to police officers. This substantial amount of evidence against Roney also reduces the significance of his guilty plea. *See Primmer v. State*, 857 N.E.2d 11, 16 (Ind.Ct.App.2006), *trans. denied; Scott v. State*, 840 N.E.2d 376, 383 (Ind.Ct.App.2006), *trans. denied.* Although we agree that Roney's guilty plea and acceptance of responsibility are entitled to significant weight, we do not agree with Roney that they are entitled to weight sufficient to preclude a maximum sentence.

The brutal nature of the crime and the fact that Roney laid in wait for Brown in his own house constitute weighty aggravating circumstances. *See Kingery*, 659 N.E.2d at 497 (fact that defendant laid in wait was sufficient on its own to support enhanced sentence for murder); *Foulks v. State*, 582 N.E.2d 374, 377 (Ind.1991) (describing brutal nature of crime in holding that trial court did not abuse its discretion in ordering enhanced sentences for murder). After reweighing the proper aggravators and mitigators, we conclude that the sixty-five year sentence imposed by the trial court is proper.

## II. Indiana Appellate Rule 7(B)

### A. Standard of Review

When reviewing a sentence imposed by the trial court, we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). We have authority to "revise sentences when certain broad conditions are satisfied." *Neale v. State*, 826 N.E.2d 635, 639 (Ind.2005). When determining whether a sentence is inappropriate, we recognize that the presumptive sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Weiss v. State*, 848 N.E.2d 1070, 1072 (Ind. 2006). We must examine both the nature of the offense and the defendant's character. *See Payton v. State*, 818 N.E.2d 493, 498 (Ind.Ct.App.2004), *trans. denied.* When conducting this inquiry, we may look to any factors appearing in the record. *Cf. Samaniego–Hernandez v. State*, 839 N.E.2d 798, 806 (Ind.Ct.App.2005) ("our review of the record does not disclose any basis upon which to grant relief relative to

that Roney was addicted to drugs to be a mitigating circumstance, but the fact that he had used drugs throughout his life to be an aggravating circumstance. Although these findings are not entirely inconsistent, they certainly reduce the weight given to either.

9. The trial court in this case found Roney's guilty plea to be a mitigating factor. Thus, this is not a situation where we fear the trial court may have extended no weight at all to Roney's plea.

[defendant's] character or the nature of the offense"), *abrogated on other grounds, Anglemyer v. State,* 868 N.E.2d 482 (Ind. 2007); *Julian v. State,* 811 N.E.2d 392, 403 (Ind.Ct.App.2004), *trans. denied* (examining facts of case to determine that sentence was not inappropriate based on defendant's character).

### B. Appropriateness of Roney's Sentence

 We recognize that the trial court sentenced Roney to the maximum sentence, and that maximum sentences should generally be reserved for the worst offenses and offenders. *See Bacher v. State,* 686 N.E.2d 791, 802 (Ind.1997). However, as we have explained,

> If we were to take this language literally, we would reserve the maximum punishment for only the single most heinous offense.... We should concentrate less on comparing the facts of this case to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character.

*Brown v. State,* 760 N.E.2d 243, 247 (Ind. Ct.App.2002), *trans. denied.*

In regard to Roney's character, we note the numerous letters written by family, friends, and members of the community professing Roney's good character. We also acknowledge that he has a relatively minor criminal history, consisting of only one felony conviction for forgery. However, we also note that Roney admitted to using illegal drugs throughout his life, indicating that despite his minor criminal history, he was not leading a law-abiding life. *See Bostick v. State,* 804 N.E.2d 218, 225 (Ind.Ct.App.2004) (although defendant lacked criminal history, evidence indicating she had a substance abuse problem and engaged in a sexual relationship with a fifteen-year-old showed she "was leading a less than law-abiding life").

In regard to the nature of the offense, we conclude that the circumstance surrounding the killing and its brutal nature certainly justify the maximum sentence. Roney, along with Gaines and Harper lay in wait for Brown in Brown's own house, "a place representing as it does a place of security in the minds of most." *Johnson v. State,* 687 N.E.2d 345, 347 (Ind.1997). After beating Brown and tying him up, Roney then delivered what appear to have been the fatal blows to a helpless victim in an effort to avoid detection by police. Roney and the others committed this brutal crime in the presence of a small child, thereby subjecting the child to risk of physical or psychological harm and demonstrating a disregard for anything except accomplishing their objective of harming Brown. We conclude that the maximum sixty-five-year sentence is not inappropriate.

### Conclusion

We conclude that although the trial court found improper aggravators and failed to find a proper mitigating circumstance, the sixty-five year sentence for murder was both proper and appropriate.

Affirmed.

VAIDIK, J., and BRADFORD, J., concur.