**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JEAN E. HADLEY**
Mt. Vernon, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| HOLLY FUHRMAN, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | ) No. 65A01-1108-CR-357 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE POSEY CIRCUIT COURT
The Honorable James M. Redwine, Judge
Cause No. 65C01-1004-FC-48

**July 3, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**DARDEN, Judge**

## STATEMENT OF THE CASE

Holly Fuhrman appeals her sentence for forgery as a class C felony.[1]

We affirm.

## ISSUE

Whether the trial court erred in sentencing Fuhrman.

## FACTS

When Fuhrman was in the third grade, Marjorie Bryant started tutoring Fuhrman in reading. After Fuhrman graduated from high school, she told Bryant that Bryant had "saved her" by teaching her how to read. (Tr. 19). Fuhrman then told Bryant that she was going to go to college to become a nurse but could not afford it. Bryant, expecting that Fuhrman was going to pay her back, began loaning $1,500 to $2,500 to Fuhrman every six months for multiple years.

In March 2005, when eighty-seven-year-old Bryant was in the hospital for a heart attack, she told her daughters that Fuhrman had $35,000 of her money and that they needed to get it back from her. Bryant's daughters, who lived out of town, had never heard of Fuhrman and did not know that Bryant was loaning her money. When they confronted Fuhrman, she admitted that she had taken the money from Bryant. Fuhrman told them that she worked as a midwife at Deaconess Hospital and claimed that she intended to pay it back. Upon the daughters' request, Fuhrman signed a promissory note for repayment of the $35,000.

---

[1] Ind. Code § 35-43-5-2.

2

As soon as the daughters left town, Fuhrman went to Bryant's house and told Bryant that she needed the promissory note because her mother had died and claimed that she needed the promissory note for the attorney to distribute her inheritance. Believing Fuhrman, Bryant gave Fuhrman the promissory note and never saw it again.

In 2007, Bryant's daughters took over Bryant's financial matters and discovered that she had missing assets. One of the daughters called Fuhrman to ask that she start paying Bryant back and that she no longer contact Bryant. Between 2008 and 2010, Fuhrman got an additional $53,000 from Bryant, some of which Fuhrman obtained after telling Bryant that she needed money to buy a midwife's license and to pay for midwife training classes. Bryant also gave Fuhrman money after Fuhrman claimed that she had uterine cancer, that she needed to have a hysterectomy or she would die, and that she needed money for the surgery because the doctor for whom she worked as a midwife did not provide health insurance. In addition to the money that Fuhrman took from Bryant, she also used Bryant's credit card without permission to charge over $21,000.

Bryant's daughters began investigating into Fuhrman's claims about graduating from college and being a midwife and discovered that these claims were false. In March 2010, Bryant's daughters confronted Fuhrman about repaying Bryant, told her that they were getting a no contact order, and informed her that they would go to the police if she did not begin paying back Bryant.

On March 12, 2010, Fuhrman created documents, including a purported court order, signed by Vanderburgh Circuit Court Judge Carl Heldt, indicating that she was going to receive $300,445.31 in inheritance money from her mother's estate. The

3

following day, Fuhrman gave the documents to Bryant's daughters, claiming that she would be able to pay Bryant back all the money she had received. The daughters took the documents and called the police.

Thereafter, the State charged Fuhrman with Count 1, forgery as a class C felony; Count 2, fraud as a class D felony; and Count 3, fraud as a class D felony. On July 11, 2011, Fuhrman entered into an oral plea agreement with the State. Fuhrman agreed to plead guilty to the forgery charge and to pay $21,000 in restitution for her unauthorized use of the credit card stemming from the two fraud charges, and the State agreed to dismiss the two fraud charges and to make no sentencing recommendation.

When discussing the oral plea agreement at the beginning of the plea hearing, the attorneys informed the trial court that the total amount of restitution involved in the case was approximately $130,000. Fuhrman's attorney stated that Fuhrman was trying to get a loan to pay the $21,000 in restitution for the plea agreement, stated that Fuhrman was "pleading open," admitted that Fuhrman did not know how she could pay restitution for $130,000, and acknowledged that "it's just the reality of the situation." (Tr. 5).

Before proceeding any further with the plea hearing, the trial court informed Fuhrman that in a situation such as hers, where "the victims [could not] be made whole," it was not likely that the trial court would give a suspended sentence. (Tr. 5). The trial court stated that it wanted to be fair to Fuhrman and inform her of any sentencing potential before she proceeded to plead guilty. Fuhrman acknowledged the trial court's notice, and Fuhrman's attorney stated that Fuhrman was ready to proceed with her guilty plea.

4

During the plea hearing, Fuhrman admitted that she had falsified the Vanderburgh court documents by taking court documents she had received in her own small claims case, leaving the judge's signature intact, and typing in the information about the court granting her the $300,445.31 as an estate distribution.  The State also set forth the factual basis, in part, by presenting testimony from a police detective and from one of Bryant's daughter.  The trial court also considered this testimony for sentencing purposes.  Bryant's daughter testified that Fuhrman told many lies to Bryant about reasons she needed money and always offered excuses to Bryant about why she was not paying her back.  At the conclusion of the hearing, the trial court accepted Fuhrman's guilty plea.

At the July 25, 2011 sentencing hearing, Fuhrman's attorney informed the trial court that Fuhrman had recently obtained employment, that she needed to be employed for sixty days before she could get a loan, and that Fuhrman was trying to obtain a $60,000 to $90,000 loan, with her father-in-law as the cosignor.  Fuhrman admitted that her credit was "not very good" and that she lived in a trailer paid for by her inlaws.  (Tr. 38).

When sentencing Fuhrman to the advisory term of four years in the Department of Correction, the trial court stated:

> You certainly are entitled to consideration for pleading guilty, admitting what you've done is wrong, and saving the State the burden of going through a trial, and saving any victims the burden of going through a trial. But you've received a substantial benefit already, in the plea bargain.  As I have told you when we started, the most likely sentence would be the advisory sentence of four (4) years in prison.  You've not only preyed upon the trust of a friend, an elderly friend, and told her stories which weren't true to get her to give you her money, but you also forged a signature of a Vanderburgh Circuit Court Judge.  So, you've subverted the legal system in

5

an attempt to cover up your offense, and to commit your crimes. The Court cannot ignore that you were willing to forge a judge's signature in order to accomplish an illegal act. If such matters like that were to become common, we would have a hard time running our court system. So, considering the fact that you plead [sic] guilty, for which I'm giving you credit, and weighing that against the violation of the trust that you took advantage of, over a substantial period of time, and for about $130,000.00 and that you subverted the legal system in an attempt to cover up your offenses, and to get away with them, I think an advisory sentence as set by the legislature is appropriate.

(Tr. 39).

DECISION

Fuhrman argues that the trial court erred in sentencing her. Specifically, Fuhrman contends that: (a) the trial court abused its discretion in its finding of aggravators; and (b) her sentence is inappropriate.

A. Abuse of Discretion

Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g,* 875 N.E.2d 218 (Ind. 2007). So long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id.* An abuse of discretion will be found where the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* A trial court may abuse its discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement

6

that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id.* at 490–91.

Fuhrman argues that the trial court abused its discretion by using the violation of a position of trust as an aggravating circumstance.

A defendant being in a position of trust with the victim has been considered a valid aggravating circumstance in the past. *See Hampton v. State*, 719 N.E.2d 803, 808 (Ind. 1999) (stating that position of trust was a valid aggravator when sentencing a former home health care provider for murder of a former elderly patient). This position of trust aggravator "applies in cases where the defendant has a more than casual relationship with the victim and has abused the trust resulting from that relationship." *Rodriguez v. State*, 868 N.E.2d 551, 555 (Ind. Ct. App. 2007).

Here, the record reveals that Bryant and Fuhrman's relationship began when Bryant began tutoring Fuhrman in reading when Fuhrman was in the third grade. This mentoring relationship apparently continued because, upon graduating from high school, Fuhrman went to Bryant to thank her, telling Bryant that she had "saved" Fuhrman and asking Bryant for money to go to college to become a nurse. (Tr. 19). Bryant, expecting that Fuhrman was going to pay her back, began loaning $1,500 to $2,500 to Fuhrman every six months for multiple years. Fuhrman, however, did not use the money to get a nursing degree[2] and did not pay Bryant back. Nevertheless, Fuhrman continued, for years, to tell Bryant lies in order to obtain money from her. Fuhrman even drove Bryant to the bank so Bryant could withdraw the money. Bryant, who was in her eighties,

---

[2] The presentence investigation report ("PSI") reveals that Fuhrman graduated from high school and then attended a vocational school at a hair academy.

continued to believe that Fuhrman would repay her. The record also reveals that Bryant once loaned Fuhrman her credit card so Fuhrman could get gas and that Fuhrman then copied the credit card number and later used it to charge $21,000 in purchases. Because the record reveals that Fuhrman had a more than casual relationship with the victim, Bryant, and abused the trust resulting from that relationship, we cannot say that the trial court abused its discretion when considering the violation of a position of trust to be an aggravating circumstance.[3]

B. Inappropriate Sentence

Fuhrman argues that her four-year sentence was inappropriate. We may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). The defendant has the burden of persuading us that her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). The principal role of a Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case."

---

[3]     Fuhrman also suggests that the trial court should have found a mitigating circumstance in the fact that she has two children. Fuhrman, however, has waived this issue by failing to make a cogent argument and failing to provide any citation to authority. *See* Ind. Appellate Rule 46(A)(8)(a).

Waiver notwithstanding, there is no requirement that a trial court find a defendant's incarceration would result in undue hardship to her dependents. *Roney v. State*, 872 N.E.2d 192, 204 (Ind. Ct. App. 2007), *trans. denied.* As our supreme court has observed, "[m]any persons convicted of serious crimes have one or more children and, absent special circumstances, trial courts are not required to find that imprisonment will result in an undue hardship." *Dowdell v. State*, 720 N.E.2d 1146, 1154 (Ind. 1999). To support use of this hardship on a dependent mitigator, there generally should be some evidence that the hardship to be suffered by a dependent is more severe than that suffered by any child whose parent is incarcerated. *See Roney*, 872 N.E.2d at 205.

At the sentencing hearing, Fuhrman's counsel generally stated that Fuhrman had two children "who are dependent on her." (Tr. 37). Fuhrman did not present any evidence that she supported them in any manner; indeed, the record reveals that she obtained employment just prior to sentencing. Because Fuhrman has failed to show that this proffered mitigator was significant, the trial court did not abuse its discretion by declining to find it as a mitigating circumstance.

*Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case. *Id.* at 1224.

In determining whether a sentence is inappropriate, the advisory sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Childress*, 848 N.E.2d at 1081. The sentencing range for a class C felony is between two and eight years, with the advisory sentence being four years. I.C. § 35-50-2-6. The trial court sentenced Fuhrman to the advisory term of four years for her class C felony forgery conviction. Because the "advisory sentence is the starting point our General Assembly has selected as an appropriate sentence for the crime committed, the defendant bears a particularly heavy burden in persuading us that his sentence is inappropriate when the trial court imposes the advisory sentence." *Fernbach v. State*, 954 N.E.2d 1080, 1089 (Ind. Ct. App. 2011) (citing *Golden v. State*, 862 N.E.2d 1212, 1216 (Ind. Ct. App. 2007), *trans. denied*), *trans. denied*.

Regarding Fuhrman's offense, the record reveals that Fuhrman told lies to Bryant, for several years, in an effort to get Bryant to give her money. Over the years, Fuhrman obtained approximately $130,000 from Bryant. Once Fuhrman's lies started to catch up with her and Bryant's daughters became aware of all the money that Fuhrman had taken from Bryant, Fuhrman forged a trial court judge's signature on a purported court document in an effort to make Bryant's daughters think that she was inheriting over $300,000 and would be paying back Bryant.

9

In support of her character, Fuhrman states that she "has no criminal history" and that she "always acknowledged her debt." Fuhrman's Br. at 4, 5. The record, however, reveals otherwise. The PSI indicates that Fuhrman has two separate 1997 convictions for conversion and that one of them was a felony charge reduced to a misdemeanor at sentencing. The record also reveals that Fuhrman continually took money from Bryant with no apparent intention to repay it. In 2005, when Bryant's daughters confronted Fuhrman about $35,000 that she had taken from Bryant, she admitted that she had taken it and, upon the daughters' request, signed a promissory note for repayment of the $35,000. However, as soon as the daughters had left town, Fuhrman later told Bryant another lie in order to take possession of the promissory note and never returned it. Additionally, Bryant's daughter testified that every Friday, from 2008 to 2010, Fuhrman called Bryant to say that she was on the way to Bryant's house with cash to repay Bryant; however, Fuhrman never showed up during the entire weekend and, instead, would call on Monday with lies about why she was unable to go to Bryant's house to pay her, such as claiming that her son was in critical care at Riley Hospital.

Indeed, the record is rife with various examples of Fuhrman's lies to Bryant that reveal Fuhrman's poor character. For example, Fuhrman told Bryant that she had uterine cancer, that she needed to have a hysterectomy or would die, and that she needed money for the surgery because the doctor for whom she worked as a midwife did not provide health insurance. The record, however, reveals that Fuhrman did not work as a midwife and that she apparently did not have cancer or a hysterectomy because she later became pregnant. When Bryant asked Fuhrman how she could become pregnant after having a

10

hysterectomy, Fuhrman told her that it was "just a miracle." (Tr. 27). Fuhrman's dishonest character is further revealed by her willingness to forge the signature of a trial court judge and to create purported court documents for a purely self-serving purpose.

Fuhrman has not persuaded us that, under the circumstances herein, her advisory sentence of four years for the commission of class C felony forgery is inappropriate. Therefore, we affirm the trial court's sentence.[4]

Affirmed.

RILEY, J., and NAJAM, J., concur.

---

[4] Fuhrman also suggests that the trial court abused its discretion when it informed Fuhrman at the beginning of the plea hearing that she would not likely receive a suspended sentence and could face an advisory sentence of four years. Fuhrman has also waived this issue by failing to make a cogent argument and failing to provide any citation to authority. *See* Ind. Appellate Rule 46(A)(8)(a). Waiver notwithstanding, we cannot say the trial court abused its discretion where a review of the record reveals that the trial court took time, prior to letting Fuhrman enter a guilty plea under an oral plea agreement, to fully inform Fuhrman of the reality of her potential sentence given her admitted inability to make restitution for what she had taken from Bryant.