## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 04 2017, 8:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Special Asst. to the State Public Defender
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Joseph P. Holstead,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | April 4, 2017<br><br>Court of Appeals Case No.<br>71A03-1608-CR-1820<br><br>Appeal from the St. Joseph Superior Court<br><br>The Honorable Jerome Frese, Judge<br><br>Trial Court Cause No.<br>71D03-9912-CF-699 |

**May, Judge.**

Joseph P. Holstead appeals the sixty-five-year sentence he received for murder[1] and the eight-year sentence he received for Class C felony attempted robbery.[2] He argues his seventy-three-year sentence is inappropriate. We affirm.

## Facts and Procedural History

Holstead experienced a childhood involving physical, verbal, and sexual abuse, as well as his parents' drug and alcohol abuse. Holstead began using drugs and alcohol at a young age, and he had been living on his own since the age of sixteen. In November 1999, twenty-four-year-old Holstead began living as a tenant in sixty-nine-year-old Peggy Seger's home

On Friday, December 3, 1999, Holstead left work and began partying with friends. Later that evening when his friends had turned in for the night, Holstead went to the liquor store where he met with a prostitute. To pay for the prostitute's services, Holstead bought her crack cocaine. Holstead used the crack cocaine with the prostitute and another stranger who was with them named Weathers. Realizing he was "out of money," (2011[3] App. at 29), Holstead told the other two he lived with Seger, who had gold and was

---

[1] Ind. Code §§ 35-42-1-1 (1997), 35-41-2-4 (1977).

[2] Ind. Code §§ 35-41-5-1 (1977), 35-42-5-1 (1984), 35-41-2-4 (1977).

[3] We acknowledge that this case has been in process for more than sixteen years, but the disorganized nature of the record presented on Appeal has greatly hindered our review. We recommend, in the future, that parties prepare appendices in accordance with Indiana Appellate Rules 50 and 51. Herein, we refer to Appellant's Appendix from his 2011 appeal as "2011 App." and any references to a transcript refer to the transcript of the sentencing hearing held on February 6, 2001.

probably sleeping, so "they'd probably be able to get in and get it and then get back to the house and get more rock." (*Id.* at 30.)

[4] Holstead and the others proceeded to Seger's house, and Holstead entered with his key. Holstead and Weathers went upstairs and "fiddled around" in Holstead's room in hesitation. (*Id.* at 37.) Finally, Weathers told Holstead to "get this going." (*Id.*) Holstead asked Weathers what to do if Seger woke up, and Weathers told Holstead to "grab a pillow and throw it over her face or something." (*Id.*) The two proceeded to Seger's bedroom. Seger was in bed asleep, but she awoke suddenly as they came in. Holstead "jumped on top of her and strangled her" with his hands. (*Id.* at 38.) Seger struggled against Holstead, but eventually she stopped.

[5] Meanwhile, Weathers went through Seger's dresser drawers. After Seger stopped struggling, Weathers handed Holstead a telephone, and Holstead wrapped the cord around Seger's neck, although he knew she was already dead. Seger then fell off the bed. Holstead then reached for a pocketknife, but later testified he could not remember why. (*Id.* at 42.) An autopsy revealed Seger suffered stab wounds prior to her death by strangulation. Afterward, Holstead, Weathers, and the prostitute used silver coins and jewelry from Seger's room to buy crack cocaine, which they consumed together.

[6] Seger's live-in boyfriend, Dennis Jenks, returned to Seger's home the next morning around 7:00 a.m. after a night shift of work. When he returned, the front door to the house was ajar, and he found Seger's bedroom had been

ransacked and the contents of the drawers had been dumped on the floor and bed. Jenks called the police. Police arrived shortly thereafter and found Seger's body on the floor underneath a pile of clothing by the bed.

[7] Holstead returned to Seger's house around 11:00 a.m. and asked what was happening. Holstead initially told police he had not been back to the house since leaving for work on Friday, December 3. Holstead indicated he began partying after work and returned to his father's house to sleep. Police contacted Holstead's father who informed police he had been up until 4:30 a.m. that night and had not seen Holstead.

[8] Holstead consented to a search that would allow police to test his clothing stains, his fingernail scrapings, and his hair samples. The stains on Holstead's clothing tested positive for human blood. When police notified Holstead of the test results, Holstead changed his story of the prior night's events. Holstead told the police he led Weathers and the prostitute to Seger's house to steal money and gold jewelry, but Weathers strangled Seger, while Holstead stood by and watched.

[9] On December 6, 1999, the State charged Holstead with murder and Class A felony attempted robbery. On September 29, 2000, Holstead pled guilty to murder and attempted robbery. The court entered judgment and conviction on the murder count and took the attempted robbery plea under advisement to decide whether that conviction could be entered as a Class A felony.

On February 6, 2001, the trial court held a sentencing hearing. The court heard statements from Holstead, Holstead's father, Seger's children, and counsel. Holstead expressed the following to Seger's family at the sentencing hearing:

> I want to tell you from the bottom of my heart that I'm sorry. I can't feel what you're feeling or what you've felt from this, but I will tell you that I'm hurting. I'm haunted in my dreams at night, and I probably will be for the rest of my life. I'm sorry. I wish I could take this all away and give you back your mother, because I did like her, and she was my friend. I never thought that I'd be capable of doing what I've done. But what is done is done, and I have confessed, and will be held accountable.

(Tr. at 55.) The court entered a conviction of Class C felony attempted robbery in addition to the previously-entered conviction of murder. The court found as a mitigator Holstead's difficult childhood involving physical, verbal, and sexual abuse from a very young age, but noted Holstead "became an adult" and had the responsibility to take control of his actions. (*Id.* at 63.) The court rejected Holstead's argument that his being under the influence of crack cocaine when he committed the crime was a mitigator, reasoning although "crack cocaine [and] alcohol [were] are greatly contributing factors" to the crime "[Holstead] did the drugs, and he let the drugs get hold of him" which led to the crime. (*Id.* at 64.) Lastly, the court found as a mitigator Holstead's remorse and willingness to accept responsibility for his actions by pleading guilty.

The court found as a "profound" aggravator the fact Holstead murdered Seger in her bedroom, "the most private" room of her home. (*Id.* at 65-66.) The court found as an even "greater" aggravator the fact that Holstead was not a

stranger, but someone to whom Seger graciously "extended her hospitality." (*Id*.) The court noted Seger "allow[ed] him the intimacy of her home, and [Holstead] transgressed that most profoundly." (*Id*.) The court found Seger's being over the age of sixty-five and "an unprotected single woman in that house" as additional aggravators. (*Id.* at 67.) Lastly, the court found the manner in which the murder was committed was an aggravator, noting the murder was "simply atrocious," "terrible," and undoubtedly created "terror and excruciating pain for the victim." (*Id.* at 68.) The court concluded "the aggravators far outweigh[ed] the mitigators." (*Id*.) The court sentenced Holstead to maximum terms of sixty-five years for murder and eight years for attempted robbery, to be served consecutively for an aggregate sentence of seventy-three years.[4]

# Discussion and Decision

[12] Holstead asserts his seventy-three-year sentence is inappropriate. Holstead admits "the crimes he committed were deplorable" and makes no argument regarding the nature of the offenses as they relate to his sentence. (Appellant's Br. at 9.) Holstead instead argues his character alone warrants a lower sentence.

---

[4] On July 25, 2016, the court granted Holstead permission to file a belated notice of appeal.

[13]     Under Indiana Appellate Rule 7(B), we may revise a sentence if, after due consideration of the trial court's decision, we find the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Williams v. State*, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008). Revision of a sentence under Rule 7(B) requires the appellant to demonstrate his sentence is "inappropriate in light of *both* the nature of the offenses and his character." *Williams v. State*, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008) (emphasis original to *Williams*). Because Holstead failed to present any argument regarding the nature of his offenses, he has waived our review of the inappropriateness of his sentence. *See Sanders v. State*, No. 02A04-1608-CR-1903, 2017 WL 727194 at *2 (Ind. Ct. App. Feb. 24, 2017) (holding issue waived where appellant failed to present any authority or analysis on the nature of his offense).

[14]     Waiver notwithstanding, Holstead has failed to persuade us his seventy-three-year sentence is inappropriate. The advisory sentence is the starting point for determining the appropriateness of a sentence. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g* 878 N.E.2d 218 (2007). The statutory range for a murder sentence was forty-five to sixty-five years, with the presumptive[5] sentence being fifty-five years. Ind. Code § 35-50-2-3 (1995). The statutory range for Class C felony robbery was two to eight years, with the presumptive sentence being four years. Ind. Code § 35-50-2-6 (1996).

---

[5] Prior to 2005, Indiana used "presumptive" sentences, which were standard sentences prescribed by the legislature for a given crime. *Harris v. State*, 897 N.E.2d 927, 928 (Ind. 2008).

[15] We assess the trial court's recognition or nonrecognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. *Gibson v. State,* 856 N.E.2d 142, 147 (Ind. Ct. App. 2006). We consider not only the aggravators and mitigators found by the trial court, but also any other facts appearing in the record. *Roney v. State*, 872 N.E.2d 192, 206 (Ind. Ct. App. 2007), *trans. denied.* Our review is deferential to the trial court's decision, and our goal is to determine whether Holstead's sentence is inappropriate, not whether some other sentence would be more appropriate. *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012), *reh'g denied.* The appellant bears the burden of demonstrating his sentence is inappropriate. *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind. 2006).

[16] In support of his argument, Holstead points to his "sincere remorse" for the crimes he committed, his acceptance of responsibility for his actions by pleading guilty, and his extremely troubled childhood. (Appellant's Br. at 9-10.) Both the State and the trial court acknowledged the sincerity of Holstead's remorse at the sentencing hearing. However, as the State correctly points out, while Holstead expressed remorse for his crimes and pleaded guilty, he only did so after realizing the State had built a strong evidentiary case against him. The record reflects Holstead initially lied to police. He first denied being at Seger's home at all on the evening of December 3 and early morning of December 4, and he told police he had been at his father's house. When his story was not corroborated by his father and the police found physical evidence of the murder on Holstead's clothes, Holstead changed his story and implicated Weathers as

being the individual who strangled Seger. It was not until months after Holstead's initial statements that he pleaded guilty to murdering Seger himself.

[17] Despite Holstead's initial denial of the crimes he committed, we note the trial court found Holstead's remorse and guilty plea to be mitigating factors it took into consideration in sentencing him. However, the court found "profound aggravation" in that Holstead (1) murdered a woman who offered hospitality to him, and (2) murdered Seger by strangling her in her bedroom. (Tr. at 66-68.) We agree with the trial court that this was a terrorizing and atrocious crime. As the trial court noted, "the fear of every citizen is having their home invaded," especially their bedroom invaded. (*Id.* at 66.) We cannot say the trial court inappropriately accorded these aggravating factors more weight than it accorded to the mitigator of Holstead's remorse.

[18] With regard to Holstead's difficult childhood, we note the trial court also considered this as a mitigating factor. The trial court noted the sympathy it had for "a small child who was being abused in his family." (*Id.* at 63.) However, while the court was sympathetic towards Holstead for the pain he suffered as a child, the court accorded this factor limited weight, noting Holstead "grew up" and had a responsibility as part of our society to not use his troubled past as an excuse to harm others. (*Id*. at 63-64.) We agree. While we acknowledge the negative impact Holstead's tragic childhood undoubtedly had on him, Holstead committed an extremely egregious crime in murdering Seger. As the trial court found, this far outweighs any redeeming aspects of Holstead's character. Holstead thus has not persuaded us that his sentence is inappropriate. *See*

*Spitler v. State*, 908 N.E.2d 694, 697 (Ind. Ct. App. 2009) (finding the nature of the defendant's offense was so unique and egregious that it substantially outweighed any positive aspects of his character).

# Conclusion

In sum, having failed to present any argument regarding the nature of his offenses, Holstead has waived Appellate Rule 7(B) review. Waiver notwithstanding, in light of Holstead's character and the undisputed nature of his offenses, we conclude his sentence is not inappropriate. Accordingly, we affirm.

Affirmed.

Najam, J., and Bailey, J., concur.