**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**ERNEST P. GALOS**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana



FILED
Jan 05 2012, 9:09 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RASHAAD MICHAEL HOGAN, | ) | |
| | ) | |
| Appellant- Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1107-CR-336 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee- Plaintiff, | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable J. Jerome Frese, Judge
Cause No. 71D01-0910-FB-114

**January 5,  2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

Following a jury trial, Rashaad Michael Hogan appeals his two convictions of robbery, two convictions of confinement, and one conviction of carjacking, all Class B felonies, and sixty-five year sentence thereon. He raises three issues for our review, which we reorder and restate as: 1) whether the trial court abused its discretion in refusing to instruct the jury regarding lesser-included offenses; 2) whether the trial court abused its discretion in instructing the jury such that Hogan could be convicted if some jurors believed he was the principal while other jurors believed he was an accomplice; and 3) whether Hogan's sentence is inappropriate. We conclude that the trial court did not abuse its discretion in refusing Hogan's requested jury instructions as to lesser-included offenses, or by instructing the jury that Hogan could be convicted if the State proved he were the principal or an accomplice. We also conclude that his sentence is not inappropriate, and therefore affirm his convictions and sentence.

## Facts and Procedural History

In September 2009, Colton Davis and Andrew McNish watched television at a friend's home and then drove in Davis's two-door car back to their shared South Bend apartment. As the two exited Davis's car at around 10:45 p.m., a group of five young men with their faces covered approached. One of those men, armed with and pointing a semi-automatic handgun, demanded that Davis and McNish turn over their valuables.

Davis threw to them his cellular phone, wallet, and keys, and began to walk away. The bandits ordered Davis lie on the ground and they began beating him all over his body. McNish handed over his cellular phone. One of the attackers hit McNish and McNish took a swing in response; a different attacker then used the gun to hit McNish in

his mouth. The robbers forced Davis and McNish into the trunk of Davis's car, closed it, all got into the car, and drove off.

As they drove, the robbers spoke with Davis and McNish between the cushions that separated the backseat from the trunk of the car. On multiple occasions they put the gun to Davis's back, demanded money, and told the two that they would shoot and kill them and throw them into the St. Joseph River. Davis revealed that he had an automated teller machine ("ATM") card in his wallet, which he already gave them, and that they could use it to obtain cash from his account. The car pulled over, Davis was moved to the backseat, was struck several times with closed fists and the gun, and was ordered to give directions to access his bank account when the car stopped again at an ATM. One of the robbers used the card to obtain $300 from Davis's account. The group continued to demand more money and Davis volunteered another account. He was struck several more times, and the robbers obtained another $200 from his account at a second ATM. Davis was then forced back into the trunk. While Davis was re-entering the trunk, one of the robbers struck McNish in the ear with the gun, causing his ear to bleed. McNish told Davis that he could not hear out of that ear. The group drove off again, continuing to tell Davis and McNish that they would be shot, killed, and thrown into the nearby river. Throughout the ordeal, the robbers made these threats at least ten times, perhaps up to or more than twenty times.

A South Bend Police officer then observed the robbers commit a traffic violation, and upon attempting to pull them over, a chase ensued. Fleeing from police, the group crashed Davis's car to a stop at 11:57 p.m. The robbers jumped out of the car and ran. As officers secured the scene they discovered Davis and McNish in the trunk. Davis

3

suffered multiple bruises; McNish's ear bled, and for at least a time, his hearing in that ear was limited. They both refused medical treatment at the scene.

During the investigation police interviewed Hogan, who admitted to committing the offenses, named his four compatriots, and largely cooperated with the investigation. The State charged him with robbery of Davis, robbery of McNish, confinement of Davis, confinement of McNish, and carjacking, all Class B felonies. At his jury trial, Hogan objected to several of the State's proposed jury instructions, and the trial court overruled his objections. Hogan also proposed some jury instructions which the trial court rejected.

The jury found him guilty of all counts and the trial court entered a judgment of conviction as to all counts except carjacking. Following a sentencing hearing, the trial court ordered that Hogan serve twenty years for robbery of Davis, fifteen years for robbery of McNish, fifteen years for confinement of Davis, and fifteen years for confinement of McNish, all to be served consecutively for a total of sixty-five years. Hogan now appeals his convictions and sentence. Additional facts will be supplied as appropriate.

## Discussion and Decision

### I. Omitted Jury Instructions of Lesser-Included Offenses

Hogan first argues the trial court abused its discretion by refusing to instruct the jury regarding the lesser-included offenses of robbery as a Class C felony, and confinement as Classes C and D felonies. Our supreme court has described the proper analysis for trial courts when a party requests an instruction on a lesser-included offense of the crime charged:

When a defendant requests a lesser-included offense instruction, a trial court applies a three-part analysis: (1) determine whether the lesser-included offense is inherently included in the crime charged; if not, (2) determine whether the lesser-included offense is factually included in the crime charged; and, if either, (3) determine whether a serious evidentiary dispute exists whereby the jury could conclude that the lesser offense was committed but not the greater.

Miller v. State, 720 N.E.2d 696, 702 (Ind. 1999) (citation omitted). Where a trial court rejects a tendered instruction upon finding the absence of a serious evidentiary dispute, we review that decision for an abuse of discretion. Brown v. State, 703 N.E.2d 1010, 1019 (Ind. 1998).

Robbery as a Class C felony is inherently included within robbery as a Class B felony. McFarland v. State, 519 N.E.2d 528, 531 (Ind. 1988); Ind. Code § 35-42-5-1. The offense is a Class B felony if the defendant is armed with a deadly weapon or the robbery results in bodily injury to any person other than the defendant. Ind. Code § 35-42-5-1(2). The issue, then, is whether a serious evidentiary dispute existed whereby the jury could have concluded that neither Hogan nor his compatriots[1] were armed with a deadly weapon and that neither Davis nor McNish sustained bodily injury.

Hogan contends "no significant evidence was produced regarding whether a deadly weapon was used as [the gun used] could have been a BB gun or something other than a real weapon." Brief of Appellant-Defendant at 16. Incidentally, a pellet gun, a BB gun, and even an inoperable gun may constitute a deadly weapon. Davis v. State, 835 N.E.2d 1102, 1112 (Ind. Ct. App. 2005), trans. denied. "Whether a weapon is a deadly weapon is determined from a description of the weapon, the manner of its use, and the

---

[1] Under the rules of accomplice liability, all accomplices may be held equally liable for any of their compatriots' actions which were a probable and natural consequence of their common plan. Collier v. State, 470 N.E.2d 1340, 1342 (Ind. 1984).

5

circumstances of the case." Id. "The fact finder may look to whether the weapon had the actual ability to inflict serious injury under the fact situation and whether the defendant had the apparent ability to injure the victim seriously through use of the object during the crime." Id. (quotation omitted). Hogan admitted to police, the transcript of which was admitted into evidence, that a silver gun was used which might have been a .45 caliber semi-automatic handgun. In addition, a substantial amount of evidence was presented that the gun was used multiple times to strike Davis and McNish, and was used to threaten to kill them as well. There was no serious evidentiary dispute that the gun which was frequently referred to at trial constitutes a deadly weapon.

"'Bodily injury' means any impairment of physical condition, including physical pain." Ind. Code § 35-41-1-4. Substantial evidence was presented that the robbers struck Davis and McNish numerous times. Davis suffered multiple bruises; McNish's ear bled, and for at least a time, his hearing in that ear was limited. While more detailed information regarding the injuries of Davis and McNish would have been helpful, there was no serious evidentiary dispute whereby the jury could conclude that neither Hogan nor his compatriots were armed with a deadly weapon and that neither Davis nor McNish sustained bodily injury. The trial court did not abuse its discretion in refusing to instruct the jury regarding robbery as a Class C felony.

Criminal confinement as a Class B felony also inherently includes confinement as Classes C and D felonies. Confinement is by default a Class D felony, but is a Class C felony if it is committed by using a vehicle, and is a Class B felony if it is committed

6

while a defendant is armed with a deadly weapon.[2]  Ind. Code § 35-42-3-3.  There is no serious evidentiary dispute that Davis and McNish were confined in a vehicle, nor, as discussed above, that a defendant was armed with a deadly weapon.  Therefore, the trial court did not err in refusing to instruct the jury of the lesser-included classes of criminal confinement.

## II.  Jury Instructions Provided

Hogan next argues the trial court erred in providing the jury with instructions that permitted his conviction if some jurors believed he committed the acts himself while other jurors believed that he aided, induced, or caused another person to commit them.  A trial court's instruction of the jury lies within the trial court's discretion.  Gantt v. State, 825 N.E.2d 874, 877 (Ind. Ct. App. 2005).

It is well-settled that an accomplice is criminally liable for the acts done by his confederates which were a probable and natural consequence of their common plan.  Collier, 470 N.E.2d at 1342.  Stated differently, "[a]n accomplice need not act out each element of an offense as the acts of one accomplice are imputed to all."  Id.

Similarly, it does not matter if some jurors believed Hogan satisfied certain elements of the offenses as the principal and other jurors believed he satisfied those same elements as an accomplice.  So long as the jury believed that the State proved each required element beyond a reasonable doubt, Hogan's convictions may stand.  He is equally culpable regardless of whether he was the principal or an accomplice for any of these offenses.  See id.  Thus, the trial court did not abuse its discretion.

---

[2] For the sake of clarity and brevity, we omit the other alternative elements, which are not relevant to this situation, that may be used to distinguish these classes of felonies.

III. Inappropriate Sentence

This court has authority to revise a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). In making this determination, we may look to any factors appearing in the record. Roney v. State, 872 N.E.2d 192, 206 (Ind. Ct. App. 2007), trans. denied. Nevertheless, the defendant bears the burden to persuade this court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006). "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." Cardwell v. State, 895 N.E.2d 1219, 1224 (Ind. 2008). Hogan was convicted of four Class B felonies. The sentencing range for a Class B felony is six to twenty years, with the advisory sentence being ten years. Ind. Code § 35-50-2-5. The trial court sentenced Hogan to twenty years for robbery of Davis, fifteen years for robbery of McNish, fifteen years for confinement of Davis, and fifteen years for confinement of McNish, all to be served consecutively, for a total of sixty-five years.

As to the nature of the offenses, Hogan makes two arguments. First, the ordeal was not the "worst of the worst." It was not, he argues, as horrendous for the victims as the State contends because neither of the victims sought medical treatment and because it lasted only about one hour and fifteen minutes at the most; it did not last several hours as the trial court stated. Br. of Appellant-Defendant at 12. While we agree with Hogan's time estimation and that the evidence does not indicate these offenses led to serious bodily harm, the crimes committed were akin to a psychological horror – as Hogan and

his compatriots tightly confined Davis and McNish in the trunk of a small car, repeatedly threatened to shoot and kill them and throw them into a river, and based on the erratic gun-wielding and violent behavior of Hogan and the others, Davis and McNish had every reason to fear that they would, in fact, be shot, killed, and thrown into the river. And although it did not last as long as the trial court mentioned, Hogan understates the harm to the extent he argues that one hour and fifteen minutes of confinement and violence is too short of a period in which one could inflict psychological harm. It is also significant that, but for the police officer's keen observation and relentless pursuit, Hogan and his compatriots' criminal jaunt would have continued even longer and it is likely it would have resulted in more serious harm – or even death – to Davis and McNish.[3]

Two, Hogan minimizes his role in the events. He contends that he did not wield the gun or strike Davis or McNish with the gun, and blandly states he was just a driver for a portion of the time and played an insignificant role in this group joyride. It is true that no part of the evidence indicates that Hogan led the group in violence or planning. However, the facts of this case include several points at which Hogan could have left the group – when they opted to take Davis's car or when they opted to take Davis and McNish with them in the trunk, when they stopped the car and pulled Davis out to squeeze him into the back seat with three other attackers on their way to the first ATM, when they arrived at the first ATM, when they arrived at the second ATM, when they stopped to put Davis back into the trunk, or when the car eventually crashed. Instead,

---

[3] We also note that the nature of this conduct approximates kidnapping, a Class A felony, which carries a sentencing range of twenty to fifty years with an advisory sentence of thirty years, per count. See Ind. Code § 35-42-3-2(a)(2) ("A person who knowingly or intentionally confines another person: . . . (2) while hijacking a vehicle; . . . commits kidnapping, a Class A felony."); Ind. Code § 35-50-2-4 (regarding sentencing for a Class A felony).

9

Hogan chose to drive the car at the beginning, knowledgeable that Davis and McNish were crammed in the trunk. Hogan remained with the group through each moment at which he could have walked away, and when the car crashed he ran from police on foot. Hogan's somewhat passive participation, to put it mildly, does not warrant a more lenient sentence.

As to Hogan's character, he highlights the following: he was cooperative with the investigation and provided accurate information, he had a difficult childhood, he was only eighteen years old at the time of the offenses, and while awaiting trial he sought employment and to further his education. We do not ignore these circumstances, and commend Hogan for his cooperation and efforts. However, the Pre-Sentence Investigation ("PSI") report, prepared by the probation department to assist the trial court in sentencing Hogan, reveals much more. Specifically, it reveals Hogan's consistent pattern of flouting the law, and dangerous and reckless behavior.

Hogan began drinking alcohol at the age of fourteen, and reported that he typically drinks about half a pint two to three times per week. He did not report a hiatus of his drinking habits following these offenses, and reportedly last consumed alcohol in April 2011 (incidentally around the time that the PSI was completed). Perhaps even more disturbing than the age at which he began drinking, the frequency of his drinking, or his continued drinking even after these offenses, is the fact that he is <u>still</u> not of legal age to drink alcohol, until February 2012. He has been routinely ignoring state liquor laws.

Hogan also admits that he began using marijuana at the age of fourteen and uses about four grams <u>every</u> day. He last used marijuana – again – in April 2011. Hogan also twice experimented with ecstasy pills at the age of sixteen. His frequent substance abuse

and defiance of the law is especially troublesome because it might have been instrumental in leading to these offenses, as he and his compatriots smoked five grams of marijuana and drank three fifths of a bottle of alcohol before they embarked on this rampage. His only reported substance abuse treatment attempt was mandated while he was in the Indiana Boy's School. Although he reportedly completed that treatment program, he admitted that it did not help him kick his habit.

In 2003, as a juvenile, Hogan was arrested for intimidation and criminal recklessness, both Class D felonies if committed by an adult. In 2004, Hogan was arrested for battery as a Class A misdemeanor.

As an adult, Hogan was arrested on two separate occasions for never having received a license. On one of these occasions he failed to yield to an emergency vehicle. We concede that these relatively minor driving violations would not usually provide significant support for enhanced and consecutive sentences, but here they are additional examples of Hogan's unrelenting disrespect for the rule of law even after numerous opportunities to change his ways. These driving offenses are also highly relevant because Hogan admits to driving Davis's car during this double robbery and yet his PSI indicates he was never licensed to drive.

In June 2009, he was convicted of receiving stolen property as a Class A misdemeanor. He was imprisoned for fifty-seven days and placed on probation, which he violated by committing the offenses which are the subject of this appeal.

Hogan's PSI demonstrates that his character is not so upstanding that his present sentence is inappropriate. We conclude, in light of the nature of Hogan's offenses and his character, that the trial court's sixty-five year sentence is not inappropriate.

<u>Conclusion</u>

The trial court did not abuse its discretion in refusing Hogan's requested jury instructions regarding lesser-included offenses, or by instructing the jury that Hogan could be convicted if the State proved he were the principal or an accomplice. We also conclude that his sentence is not inappropriate, and therefore affirm his convictions and sentence.

Affirmed.

NAJAM, J., and VAIDIK, J., concur.