Benjamin ROSE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 02A03–0402–CR–58.

Court of Appeals of Indiana.

June 16, 2004.

William S. Lebrato, Deputy Public Defender, Fort Wayne, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Benjamin Rose was charged with Counts I, II and III, rape, a Class A felony;[1] Counts IV, V, VI and VII, criminal deviate conduct, a Class A felony;[2] Count VIII, burglary, a Class A felony;[3] Count IX, criminal confinement, a Class B felony;[4] and Counts X, XI and XII, rob-

---

1. Ind.Code § 35–42–4–1.

2. Ind.Code § 35–42–4–2.

3. Ind.Code § 35–43–2–1.

4. Ind.Code § 35–42–3–3.

bery, a Class B felony.[5] Rose pled guilty to burglary, criminal confinement, two counts of criminal deviate conduct, and three counts of robbery. After a hearing, the trial court sentenced Rose to 40 years for each criminal deviate conduct conviction, 30 years for burglary, and 10 years for criminal confinement, and it ordered those sentences served consecutively. The trial court also sentenced Rose to 15 years for each count of robbery, ordering those sentences to be served concurrent with each other but consecutive to the other convictions. Rose's total sentence is 135 years.

Rose appeals, alleging the trial court improperly evaluated the aggravating and mitigating circumstances and his sentence is inappropriate.[6] We affirm.

## FACTS AND PROCEDURAL HISTORY

On January 10, 2003, 16 year old Rose had been drinking and smoking marijuana. He and a friend, Christopher Caskey, went to the apartment of L.J., J.T. and Je.T.,[7] with the intent to commit theft. Rose gave Caskey a gun.

Caskey knocked on the door and when Je.T. opened the door, Caskey displayed the gun and pushed his way inside. After being locked outside for a few minutes, Rose entered the apartment. Caskey, who

was still holding the gun, ordered L.J. and J.T.[8] to remove their clothing and perform oral sex on Rose. Caskey raped J.T. twice and L.J. once, and also forced them to perform oral sex on him and on each other. Je.T. was forced to sit in a chair with his head covered during these events, and L.J. was forced to perform oral sex on him.[9] Caskey and Rose each held the gun at different points, although Rose may not have pointed the gun at any of the victims. At some point, Caskey slapped one of the women. Rose and Caskey took wallets and jewelry from the victims as well as a DVD player and DVDs from the apartment. The victims were told not to move, and Rose and Caskey left. Approximately 30 seconds later, Rose and Caskey came back to check on the victims. Rose and Caskey left a second time, and the victims reconnected the telephone and contacted the police. J.T. had to be taken to the hospital to be treated for pain, cramping, and premature labor.

## DISCUSSION AND DECISION

1. *Aggravating and Mitigating Circumstances*

■ The court found two aggravating circumstances: Rose's criminal history, and the nature and circumstances of the crime.[10] The trial court found one mitigat-

---

5. Ind.Code § 35–42–5–1.

6. Rose claims his sentence is "manifestly unreasonable." Effective January 1, 2003, our supreme court amended Ind. Appellate Rule 7(B) to provide: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Accordingly, we review Rose's claim under the new standard. *See, e.g., Kien v. State,* 782 N.E.2d 398, 416 n. 12 (Ind.Ct.App.2003), *reh'g denied, trans. denied* 792 N.E.2d 47 (Ind.2003).

7. Je.T. is J.T.'s brother. J.T.'s two-and-a-half year old child was also in the apartment when these events occurred.

8. At the time, J.T. was 7 months pregnant.

9. Caskey also ordered J.T. to perform oral sex on Je.T., but she refused.

10. We have a transcript of the sentencing hearing but no separate sentencing order. It is unclear from the sentencing transcript whether the trial court intended there to be three separate aggravating circumstances, because the trial court mentioned Rose's viola-

ing circumstance, that Rose pled guilty and accepted responsibility for his actions. Rose claims the trial court overlooked a number of mitigators, assigned insufficient weight to mitigators, and improperly balanced the aggravators and mitigators.

A trial court has broad discretion to determine the sentence imposed on a defendant. *Henderson v. State*, 769 N.E.2d 172, 179 (Ind.2002). That discretion includes the ability to increase or decrease the sentence from the presumptive based on aggravating or mitigating factors and to determine whether sentences should be served consecutively or concurrently. *Id.* We will not modify the sentence imposed by the trial court unless a clear abuse of discretion has occurred. *Id.* An abuse of discretion has occurred if the trial court's decision is against the logic and effect of the facts and circumstances before the court. *Krumm v. State*, 793 N.E.2d 1170, 1186 (Ind.Ct.App.2003).

When the trial court deviates from the presumptive sentence, it is required to: (1) identify all significant aggravating and mitigating circumstances;[11] (2) state why each circumstance is aggravating or mitigating; and (3) explain its evaluation and balancing of the aggravating and mitigating circumstances to arrive at the sentence imposed. *Henderson*, 769 N.E.2d at 179.

Rose contends the trial court failed to consider the following factors as mitigators: Rose was sixteen at the time of the offense, Rose had a troubled childhood, the crime was a result of circumstances unlikely to reoccur, Rose acted under strong provocation by Caskey, and Rose's

imprisonment would result in undue hardship to him. Rose also claims the trial court merged two mitigating factors into one, thereby failing to consider Rose's willingness to testify against Caskey as a mitigating circumstance.

A sentencing court must consider all evidence of mitigating circumstances submitted by the defendant; however, whether to find a mitigator within that evidence is within the court's discretion. *Id.* If the evidence in support of the mitigator is "highly disputable in nature, weight, or significance" then the trial court does not err by declining to find that mitigator. *Id.* (quoting *Smith v. State*, 670 N.E.2d 7, 8 (Ind.1996)). If the court completely ignores "mitigating circumstances clearly supported by the record," we may infer that the trial court improperly overlooked them. *Id.* Nevertheless, "the court is obligated neither to credit mitigating circumstances in the same manner as would the defendant, nor to explain why he or she has chosen not to find mitigating circumstances." *Id.*

From a review of the sentencing transcript, it is clear the trial court did not ignore any of the mitigating factors proposed by Rose. We review the evidence supporting each proposed mitigator to determine whether the trial court abused its discretion by declining to find the mitigators proposed by Rose.

The trial court considered Rose's age, found it "not a significant mitigating circumstance," (Sent. Tr. at 31), and stated: "at the young age of seventeen,[12] this young man has acquired a significant crim-

---

tion of probation and failure to respond to numerous juvenile proceedings. Because it was unclear, we have followed the State's position that there were only two aggravating circumstances found.

11. Some aggravating and mitigating circumstances can be found in Ind.Code § 35–38–1–7.1.

12. Rose was sixteen when he committed the crimes, but was seventeen when he was sentenced.

inal history such as would deprive that age of being mitigating." (*Id.*) (footnote added). The Appendix does not contain a presentence report; as a result, we must rely on the statements of counsel with respect to Rose's criminal history:

> I count seven adjudications. Possession of stolen auto parts, which would be a felony if he had been an adult. Operating a motor vehicle without a license, possession of alcohol by a minor, possession of a product with an altered identification, criminal trespass, operating while intoxicated and reckless possession of paraphernalia.

(*Id.* at 16.) "[H]e's also been arrested several other times for alcohol offenses as well as receiving stolen property and auto theft and stealing offenses." (*Id.* at 17.)

Our supreme court has held that young age does not "automatically" qualify as a significant mitigator. *Gross v. State*, 769 N.E.2d 1136, 1141 n. 4 (Ind.2002). In fact, it "is neither a statutory nor a per se mitigating factor. There are cunning children and there are naïve adults." *Sensback v. State*, 720 N.E.2d 1160, 1164 (Ind. 1999). Accordingly, when a defendant is in his teens or early twenties, chronological age is only the starting point. *Monegan v. State*, 756 N.E.2d 499, 504 (Ind. 2001). What really must be determined is whether the young offender is "clueless" or "hardened and purposeful." *Id.*

The trial court weighed Rose's age with respect to the crimes he committed along with his criminal history. We cannot say the trial court abused its discretion in not considering Rose's age as a mitigating circumstance. *See id.* at 505.

The trial court also considered Rose's troubled childhood. Evidence presented at the sentencing hearing and through Rose's Pre–Sentence Memorandum indicates his childhood was marked by a lack of parental supervision and support. A psychological evaluation performed by Dr. David Lombard when Rose was 13 years old found that Rose's "family problems are worse than most." (App. at 59.) A photograph of Rose's bedroom admitted as an exhibit is touching, showing no signs of decoration other than a Wal–Mart bag tacked to one wall. The trial court found "that childhood unfortunate though it may have been, does not mitigate what happened here." (Sent. Tr. at 31.) While we must agree that Rose's childhood was pitiful, the trial court did not abuse its discretion when it declined to find that troubled childhood was a mitigator. *See Coleman v. State*, 741 N.E.2d 697, 700 (Ind.2000) (noting "this court has consistently held that evidence of a difficult childhood warrants little, if any, mitigating weight"), *reh'g denied, cert. denied* 534 U.S. 1057, 122 S.Ct. 649, 151 L.Ed.2d 566 (2001), *reh'g denied* 534 U.S. 1158, 122 S.Ct. 1137, 151 L.Ed.2d 1028 (2002).

The trial court also declined to credit Rose's argument he was unlikely to reoffend. Specifically, the trial court found: "I don't know why, given the history he has and the severity of the offenses committed, there's no reason to believe that given the opportunity he wouldn't do it again." (Sent. Tr. at 32.) No abuse of discretion occurred.

Rose pointed out that his prior juvenile adjudications were non-violent and related to his alcohol and drug abuse. He claims his alcohol and drug addiction is a mitigator. However, the trial court noted that Rose failed to accept the drug abuse and alcohol treatment offered to him on at least three different occasions.

> He was given at least three opportunities to deal with this problem and chose not to, and I understand that's quite a complex issue, but in the meantime, he received the benefit if one presumes that

treatment in juvenile court is a benefit, he has had made available to him a great number of resources of the juvenile court, none of which seemed to assist him in any way, which means that he must have chosen, at least to some extent, what he did.

(*Id.* at 32.) We cannot say the trial court erred in finding his addictions were not a mitigating circumstance. *See, e.g., Iddings v. State*, 772 N.E.2d 1006, 1008 (Ind.Ct. App.2002) (holding court properly weighed aggravators and mitigators, and noting some trial courts find substance abuse to be an aggravator), *trans. denied* 783 N.E.2d 700 (Ind.2002); *Simmons v. State*, 717 N.E.2d 635, 641 (Ind.Ct.App.1999) (holding trial court did not err when it gave little weight to defendant's alcoholism as a mitigator).

The trial court also did not find that Rose was provoked in any way by Caskey. The trial court noted: "I suppose it's an interesting intellectual discussion that by refusing to have intercourse with these women, which he apparently did, he displayed his ability to resist the orders of Mr. Caskey, therefore indicating that he was able if he wished not to do any of the rest." (Sent. Tr. at 32–3.) There was no error in finding provocation was not a mitigating circumstance. *See, e.g., Taylor v. State*, 681 N.E.2d 1105, 1112 (Ind.1997) (trial court did not err by rejecting provocation mitigator when not supported by evidence in record).

■ Rose also argues a lengthy imprisonment will result in an undue hardship on him because he has no hope of getting out of prison alive. The trial court acknowledged Rose's argument and stated "[i]t's tough to talk in this case about undue hardships." (Sent. Tr. at 33). Clearly, any imprisonment is a hardship on the person being imprisoned. As a result, we cannot say the trial court abused its discretion in failing to take this into account as a mitigating circumstance. *See, e.g., Jones v. State*, 790 N.E.2d 536, 540 (Ind. Ct.App.2003) (declining to find hardship on family to be a mitigator was not erroneous where defendant had not demonstrated hardship would be "undue").

■ With respect to Rose's willingness to testify against Caskey, the trial court did not specifically address that potential mitigator, but did find Rose's remorse as shown by his plea of guilty was a mitigating circumstance. There were other witnesses to testify against Caskey, along with DNA evidence proving Caskey was the actual rapist. The trial court therefore did not abuse its discretion in declining to find Rose's willingness to testify against Caskey to be a mitigating circumstance.

As aggravators, the trial court considered Rose's criminal history and the nature and circumstances of the crime. The trial court stated:

I guess ultimately that's what this whole case comes down to, it's the nature of this offense. I've been on the bench 15 or 16 years and practiced criminal law before that another 15 or 16 years, and I've recalled vividly one other case that I sat on as Judge in which the perpetrators exhibited the kind of cruelty that was exhibited here by these two men.... As someone described this whole thing as being irrational and it was. It was cruel, and the fact that the Defendant voluntarily participated in this and displayed that ability to participate voluntarily or not as he wished, leads to my conclusion that there are substantial aggravating circumstances that far outweigh the mitigating circumstance.

(Sent. Tr. at 33, 34). Although Rose was not the actual rapist, he participated in the sexual humiliation of two women, one of

whom was seven months pregnant. While a different judge may have given some weight to Rose's additional proposed mitigators or may have balanced the aggravators and mitigators differently, we cannot say the trial court abused its discretion by finding the aggravating circumstances outweighed the mitigating circumstances.

### 2. *Inappropriate Sentence* [13]

Rose also argues his 135–year sentence was inappropriate in light of his character and the nature of the offense. A sentence authorized by statute will not be revised unless it is inappropriate in light of the nature of the offense and the character of the offender. App. R. 7(B); *Kien,* 782 N.E.2d at 416. When considering the appropriateness of the sentence for the crime committed, the sentencing court should focus initially on the presumptive sentence. *Id.* It may then consider deviation from the presumptive sentence based on a balancing of the factors that must be considered pursuant to Ind.Code § 35–38–1–7.1(a) [14] together with any discretionary aggravating and mitigating factors found to exist. *Id.*

Rose pled guilty to three Class A felonies and four Class B felonies. The presumptive sentence for a Class A felony is 30 years, to which the court may add not more than 20 years. Ind.Code § 35–50–2–

4. The presumptive sentence for a Class B felony is 10 years, with the court having the option of adding 10 more years. Ind. Code § 35–50–2–5. Accordingly, the maximum sentence Rose could have received, if the trial court had ordered maximum sentences and ordered they be served consecutively, was 270 years.

For his two criminal deviate conduct convictions, Rose received 40–year sentences, which are longer than the presumptive sentence but not the maximum possible sentence. For burglary, Rose received the presumptive sentence of 30 years. For his criminal confinement conviction, Rose was sentenced to the presumptive term of ten years. Finally, Rose received three 15–year sentences for robbery, which has a presumptive sentence of 10 years and a maximum sentence of 20 years. In sum, Rose did not receive the maximum possible sentence for any of his convictions. In addition, the total length of his sentence is 135 years, half the maximum sentence possible.

Rose argues we should reduce his sentence because the maximum possible sentence should be reserved for the worst offender. Rose correctly states the law in Indiana. *See Buchanan v. State,* 767 N.E.2d 967, 973 (Ind.2002). However, that rule does not apply to his case. As dis-

---

**13.** The pre-sentence report was not included in the Appellant's Appendix. It would have been helpful had we had been able to review that report.

**14.** That section provides:
(a) In determining what sentence to impose for a crime, the court shall consider:
(1) the risk that the person will commit another crime;
(2) the nature and circumstances of the crime committed;
(3) the person's:
(A) prior criminal record;
(B) character; and
(C) condition;

(4) whether the victim of the crime was less than twelve (12) years of age or at least sixty-five (65) years of age;
(5) whether the person committed the offense in the presence or within hearing of a person who is less than eighteen (18) years of age who was not the victim of the offense;
(6) whether the person violated a protective order issued against the person under IC 31–15, IC 31–16, or IC 34–26–5 (or IC 31–1–11.5, IC 34–26–2, or IC 34–4–5.1 before their repeal); and
(7) any oral or written statement made by a victim of the crime.

cussed above, Rose did not receive the maximum sentence for any of his crimes nor did he receive the maximum possible total sentence. Accordingly, we may not reduce his sentence on that ground.

The nature of Rose's offenses and his character do not lead us to believe his sentence is inappropriate. The crimes were heinous, and we need not recount specific facts to demonstrate why a 135–year sentence is appropriate. As for Rose's character, he had a number of adjudications as a juvenile delinquent. While Rose may not have actively engaged in all of the crimes Caskey committed and did not plead guilty to aiding Caskey in the commission of those additional offenses, the fact that he held the gun while Caskey repeatedly raped and committed deviate sexual conduct against two women, one of whom was seven months pregnant, suggests Rose's character needs much improvement. A 135–year sentence is not inappropriate.

Affirmed.

SULLIVAN, J., and VAIDIK, J., concur.