**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**RANDY M. FISHER**
Leonard Hammond Thoma & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOSEPH A. KAST, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A04-1301-CR-35 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable John F. Surbeck, Jr., Judge
Cause No. 02D04-1006-MR-6

**October 10, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

Defendant-Appellant, Joseph Allen Kast (Kast), appeals his sentence of sixty-five years following his conviction of murder, a felony, Ind. Code § 35-42-1-1.

We affirm.

## ISSUES

Kast raises two issues on appeal, which we restate as:

(1) Whether the trial court abused its discretion in sentencing Kast by failing to consider certain mitigating factors; and

(2) Whether the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender.

## FACTS AND PROCEDURAL HISTORY

On June 24, 2002, eighty-five-year-old Claude Berkshire (Berkshire) was found deceased in his garage, having died from multiple stab wounds. Berkshire's homicide (Berkshire Murder) remained unsolved for seven years. Then, on May 28, 2009, Kast confessed to the police that he had stabbed Berkshire to death. According to Kast's admissions during police interviews, on the night of June 23, 2002, Kast entered Berkshire's garage through a side door and remained hidden until the next morning, waiting for the Berkshire to appear. When Berkshire entered his garage on the morning of June 24, Kast approached Berkshire from behind and hit him in the back of the head with a hammer, knocking Berkshire to the ground. Kast proceeded to stab him repeatedly. Kast also stole $30.00 from Berkshire's wallet, wiped it clean to remove any fingerprints, and

returned the wallet to Berkshire's pocket. Kast then walked to the St. Mary's River, where he discarded the knife. Kast was twenty-five-years-old on the date of the Berkshire Murder.

In July of 2002, one month after the Berkshire Murder, Kast committed a subsequent murder in Huntington County (Huntington Murder), for which a jury found him guilty but mentally ill. On June 2, 2003, Kast was sentenced to serve fifty-five years for the Huntington Murder. At the time Kast confessed to the Berkshire Murder, he was incarcerated.

With respect to the Berkshire Murder, Kast entered a plea of not guilty. He requested a jury trial and asserted a defense of mental disease or defect. On August 2, 2010, the trial court "appointed three disinterested psychologists/psychiatrists" to evaluate Kast's "competency to stand trial and his sanity at the time of the alleged offense." (Appellant's App. pp. 82-90). On May 20, 2011, the trial court found that Kast was not competent to stand trial and ordered the Mental Health Division of Family and Social Services to provide competency restoration services. On July 23 and 27, 2012, after follow-up mental health evaluations, the trial court conducted competency hearings and concluded that Kast had attained the requisite competency to stand trial.

From December 11, 2012 through December 14, 2012, a jury trial was conducted. At the close of the evidence, the jury found Kast guilty of the Berkshire Murder, rejecting his defense of mental illness by refusing to find that Kast was "NOT RESPONSIBLE BY REASON OF INSANITY at the time of the crime" *or* "GUILTY BUT MENTALLY ILL at the time of the crime." (Appellant's App. p. 285).

3

On January 11, 2013, the trial court held a sentencing hearing where it identified and weighed several aggravating and mitigating circumstances. The trial court found as aggravating factors: Kast's criminal history, particularly his prior conviction for the Huntington Murder;[1] Berkshire's advanced age; and Kast's "careful efforts to set up the scene, to lie in wait for his victim and then to make, apparently . . . extraordinary efforts to conceal his identity." (Appellant's App. pp. 309-10). As for mitigating factors, the trial court

> considered those factors offered by [Kast] in terms of mitigation. There is some evidence . . . to indicate that Mr. Kast had a poor childhood and was abused by members of his family including I think his brother as I recall. Given the nature of this offense, I cannot give that a great deal of mitigating weight, but would note and I have considered it. Very clearly, regardless of the finding of the jury, Mr. Kast suffers from significant mental illness. I'm further satisfied by the reports of the experts that Mr. Kast knew what he was doing. Mr. Kast was able to control his own conduct and chose voluntarily, willfully, intentionally to kill Mr. Berkshire. I will consider as a mitigating circumstance [Kast]'s mental health issues. They are significant and he hopefully has and will continue to receive treatment for those mental health issues at the Indiana Department of Correction. And I have considered it in mitigation to the extent that I could.

(Appellant's App. pp. 306-07). As a result, the trial court sentenced Kast to sixty-five years to be served consecutively to his fifty-five-year sentence for the Huntington Murder.

Kast now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Sentencing Error*

---

[1] Kast's criminal history also includes three misdemeanor convictions and two juvenile delinquency adjudications—one of which would have been a felony had Kast been an adult at its commission.

4

In 2005, the Indiana General Assembly amended the sentencing statutes, and a court must "sentence a defendant under the sentencing statutes in effect at the time the defendant committed the offense." *Robertson v. State*, 871 N.E.2d 280, 284 (Ind. 2007). In this case, the trial court sentenced Kast in January of 2013 for a murder committed in June of 2002. Thus, we review the sentence according to the mandates of Indiana's former sentencing scheme, which established a presumptive sentence of fifty-five years for murder and permitted the trial court to either add or subtract up to ten years for aggravating or mitigating circumstances. Ind. Code § 35-50-2-3(a) (1998 & Supp. 2001). The statute enumerated both mandatory and discretionary criteria for a court to evaluate but did not limit the trial court's consideration to only the enumerated factors. I.C. § 35-38-1-7.1(a)-(d). "When the trial court deviates from the presumptive sentence," it must "identify all significant aggravating and mitigating circumstances[,]" and explain "why each circumstance is aggravating or mitigating" and how it evaluated and balanced those circumstances in arriving at the particular sentence. *Rose v. State*, 810 N.E.2d 361, 365 (Ind. Ct. App. 2004).

The trial court has complete discretion in sentencing matters. *Henderson v. State*, 769 N.E.2d 172, 179 (Ind. 2002). Therefore, this court will review the trial court's sentencing decision, "including [its] decisions to increase or decrease the presumptive sentence because of aggravating or mitigating circumstances and to run the sentences concurrently or consecutively[,]" only for an abuse of discretion. *Id.*

A. *Mitigating Circumstances*

5

Kast first claims that the trial court abused its discretion by failing to consider two mitigating circumstances. He argues that the evidence establishing his poor childhood—where he "was both physically and sexually abused by his brother"—and, "[m]ore importantly, [his] history of mental health issues [is] clearly supported by the record and significant enough to warrant sentence mitigation." (Appellant's Br. pp. 11-12). "The finding of mitigating circumstances is within the discretion of the trial court." *Rascoe v. State*, 736 N.E.2d 246, 248-49 (Ind. 2000). A defendant alleging that the trial court failed to identify a mitigating circumstance must "establish that the mitigating evidence is both significant and clearly supported by the record." *Id.* at 249.

Contrary to Kast's claim, the trial court *did* specifically identify Kast's mental infirmities and his unfortunate childhood as mitigating circumstances. It is well-established that a "trial court is not required to weigh or credit the mitigating evidence the way a defendant suggests it should be credited or weighed." *Smith v. State*, 770 N.E.2d 818, 823 (Ind. 2002). Therefore, we find the trial court properly identified those mitigating circumstances it found significant and acted within its discretion to balance their weight against the aggravating factors.

Additionally, Kast correctly asserts that our supreme court has previously held that a defendant's mental health is entitled to careful scrutiny in a court's calculation of its mitigating effect. *See id.* (setting forth non-exhaustive factors, including, for example, "the extent of the defendant's inability to control his or her behavior due to the disorder or impairment"). We do not find, however, that the trial court abused its discretion by failing to perform a separate mitigation analysis regarding Kast's mental health. In *Smith*, the

6

supreme court explained that "the factors . . . are among those the trial court must consider in determining what, if any, mitigating weight to give to any evidence of a defendant's mental illness *after a finding or plea of guilty but mentally ill*." *Id.* (emphasis added). Kast, in contrast, entered a plea of not guilty, and the jury found him guilty of murder—not guilty but mentally ill. Accordingly, the trial court properly considered the mitigating factors in making its sentencing determination.

### B. *Consecutive Sentences*

Kast also claims that the trial court abused its discretion by ordering that his sentence be served consecutive to his sentence for the Huntington Murder—for an aggregate sentence of 120 years. A trial court may, in its discretion, evaluate the aggravating circumstances as factors also favoring the imposition of a consecutive, rather than concurrent, term of imprisonment. I.C. § 35-38-1-7.1(b). "A trial court is not obligated to identify the aggravators that support consecutive sentences separately from the factors that support the sentence enhancement." *Smith*, 770 N.E.2d at 821. "One valid aggravator alone is enough to enhance a sentence or impose it to run consecutively with another." *Sherwood v. State*, 749 N.E.2d 36, 38 (Ind. 2001).

> In sentencing Kast to a consecutive term of sixty-five years, the trial court stated,
>
> I have no intention of running these sentences concurrently with one another. To do that would be to ignore the existence of one [murder] or the other . . . . It best describes the need to run the sentences consecutively to one another because to do otherwise would depreciate the seriousness of this offense and the injury caused, or the offense in Huntington or the injury caused, which is simply not right. . . . [I]ndividual offenses should receive individual sentences.

(Appellant's App. p. 308). Generally, the finding that an "imposition of a reduced sentence would depreciate the seriousness of the crime" is an aggravating factor used only to justify a "refusal to reduce the presumptive sentence." *Bacher v. State*, 686 N.E.2d 791, 801 (Ind. 1997). Because the trial court was not "considering a reduced sentence" for Kast, this aggravating factor alone would not justify the consecutive sentence. Regardless, we find no abuse of discretion because the trial court's sentencing statement included findings of other valid statutory aggravators, each sufficient to impose the consecutive sentence. *See* I.C. § 35-38-1-7.1(b)(2),(5).

## II. *Manifestly Unreasonable Sentence*

Kast next contends that his sentence is "inappropriate in light of the nature of the offense and [his] character." (Appellant's Br. pp. 14-15). Because Kast's crime was committed prior to the amendment of Indiana Appellate Rule 7(B), we will address this claim using the prior standard of "manifestly unreasonable." Ind. Appellate Rule 7(B) (2002). This court has authority to review and revise a sentence authorized by statute, but we will not do so "unless the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender." *Id.*; *see* Ind. Const. art. VII, § 6. This court's "review is deferential to the trial court." *Rascoe*, 736 N.E.2d at 249. Thus, in order to merit revision, the sentence must be "clearly, plainly, and obviously" unreasonable." *Id.*

Here, Kast was convicted of murder, a felony, which carries a presumptive sentence of fifty-five years with a possibility of having ten years either added or removed based on the trial court's findings of aggravating and mitigating circumstances. The "nature of the offense" is that it was a random and savage attack. Kast selected a victim who was sixty

8

years his senior and whom he had never met. He entered Berkshire's garage and waited all night before surprising Berkshire from behind and repeatedly stabbing him until he managed to sever Berkshire's carotid artery. Kast then stole a meager amount of money from Berkshire's wallet, carefully covered up his tracks, tossed his weapon, and maintained his silence for nearly a decade.

With respect to "character of the offender," Kast argues a lesser sentence is warranted because at the time he committed both the Berkshire Murder and the Huntington Murder, he "was suffering from his most se[ver]e paranoid schizophrenic episode in his lengthy mental health history." (Appellant's Br. p. 15). The jury, however, found Kast's behavior was not excused by his mental health infirmities. Furthermore, from adolescence to adulthood, Kast has accumulated a substantial criminal record, which now includes two murder convictions. In light of all these factors, we find that Kast's sentence is not clearly, plainly, and obviously unreasonable.

Kast further argues that his sentence merits revision because "the record is completely devoid of any dialogue by the trial court that [it] considered Mr. Kast the 'worst of the worst.'" (Appellant's Br. p. 16). It is a long-standing principle "that the maximum sentence enhancement permitted by law . . . should . . . be reserved for the very worst offenses and offenders." *Brown v. State*, 760 N.E.2d 243, 245 (Ind. Ct. App. 2002) (alterations in original), *trans. denied.* Because this court has previously determined that, if taken literally, this principle "would reserve the maximum punishment for only the single most heinous offense[,]" the focus in sentence review should remain on "the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals

about the defendant's character." *Id.* at 247. Here, Kast has an extensive criminal history with a high likelihood of reoffending; he selected an innocent and elderly victim and brutally stabbed him for reasons that Berkshire's family will never understand. We decline to reduce Kast's sentence.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion in its consideration of mitigating factors, and the sentence is not manifestly unreasonable in light of the nature of the offense and the character of the offender.

Affirmed.

ROBB, C. J. and KIRSCH, J. concur