## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 30 2017, 8:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Randy M. Fisher
Deputy Public Defender
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Matthew C. Foster,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 30, 2017

Court of Appeals Case No.
02A03-1703-CR-632

Appeal from the Allen Superior Court

The Honorable John F. Surbeck, Jr., Judge

Trial Court Cause No.
02D05-1508-FB-10

**Robb, Judge.**

# Case Summary and Issues

Following a jury trial, Matthew Foster was convicted of sexual misconduct with a minor, a Class B felony; sexual misconduct with a minor, a Class C felony; child exploitation, a Class C felony; and possession of child pornography, a Level 6 felony. The trial court sentenced Foster to an aggregate term of fourteen years to be executed at the Indiana Department of Correction. Foster now appeals his convictions,[1] raising three issues for our review which we restate as: (1) whether the evidence was sufficient to support his convictions of two counts of sexual misconduct with a minor; (2) whether the trial court abused its discretion in sentencing Foster; and (3) whether Foster's sentence is inappropriate in light of the nature of his offenses and his character. Concluding the evidence was sufficient, the trial court did not abuse its discretion, and the sentence was not inappropriate, we affirm.

# Facts and Procedural History

The facts most favorable to the verdict reveal that in early 2010, Foster, who was then twenty-eight years old, began a sexual relationship with J.D., then fourteen years old. J.D. eventually moved in with Foster and the two lived together for five years. In January 2015, J.D. moved out and disclosed the

---

[1] Foster does not appeal his convictions of child exploitation or possession of child pornography.

relationship during an unrelated meeting with Victim's Assistance in Fort Wayne, Indiana. Law enforcement was notified and an investigation ensued.

[3] On August 3, 2015, the State charged Foster with four counts of sexual misconduct with a minor, Class B felonies; sexual misconduct with a minor, a Class C felony; and neglect of a dependent, a Class D felony. In February 2016, Foster was additionally charged with child exploitation, a Class C felony, and possession of child pornography, a Level 6 felony. Prior to trial, the State dismissed the charge of neglect of a dependent.

[4] At trial, the State presented evidence that in 2009, Foster was a twenty-eight-year-old veteran who recently returned from a tour of duty in Iraq. Foster had a three-year-old child, C.F., who lived with Foster's parents while he was on active duty. Upon his return from Iraq, Foster moved into his grandfather's house in Monroeville, Indiana, and resumed caring for C.F. For extra help, Foster often employed a teenager, Angel Wolfcale, to babysit C.F.

[5] J.D., then a fourteen-year-old[2] freshman in high school, lived with her mother, Jennifer Bragg, and sister, J.B. Jennifer's job required her to work late into the night and J.D. and J.B. were often left unsupervised. The family moved frequently, occasionally stayed at friends' homes, and were in-and-out of hotel rooms.

---

[2] J.D. was twenty-one years old at the time of trial.

[6]   J.D. testified that in late January or early February 2010, her friend, Wolfcale, invited her to help babysit C.F. at Foster's home.  J.D. agreed, and Foster drove the girls to his home where they learned that rather than babysit C.F., they would "hang out and party."  Transcript, Volume 1 at 49.  That night, Foster and J.D. ended up "kissing and then touching."  *Id.* at 51.  The two then had no contact until Foster found J.D. on Facebook and they began communicating electronically.  This communication carried on for "a while" and the two discussed "sexual things."  *Id.* at 52-53.  The next time J.D. saw Foster was in March 2010, when she told her mother that she was going to babysit C.F. at Foster's home.  According to J.D., that night was the first time the two had sexual intercourse and she later told her sister, J.B., and her friend, Elizabeth Newbauer, that she was having sexual intercourse with Foster.

[7]   J.D. kept a notebook in which she wrote class notes, notes about Foster, and "doodles."  *Id.* at 61-62.  In a note dated March 8, 2010, J.D. wrote about loving Foster and placed their names inside of a heart.  Another note, to J.D. from a friend, stated:

> no I'm not gonna [sic] tell on you cause [sic] you will get in trouble & matt would go to jail & i would get in trouble for not saying anything about it when i found out.  you really think i would tell?

State's Exhibit 1.  J.D. also wrote about having sex with Foster multiple times over spring break of her freshman year and about marrying Foster.

[8] Throughout the rest of her freshman year, J.D. would see Foster three to five times per week, often engaging in sexual intercourse. These visits occurred under the guise of J.D. babysitting for C.F., or Foster purporting to pick up J.D. for school when the two were in fact returning to Foster's home. The sexual relationship continued throughout the summer and in June 2010, J.D. celebrated her fifteenth birthday at Foster's home. On August 1, 2010, shortly after J.D.'s fifteenth birthday, Foster and J.D. were photographed kissing with Foster's hand on J.D.'s buttocks.

[9] Following a turbulent freshman year, J.D. began expressing to Foster and her mother, Jennifer, that she wanted to transfer schools. The high school in Foster's district was smaller than the high school J.D. attended and Foster saw an opportunity to get more help with C.F., who was now four years old, so he sought temporary guardianship of J.D. Jennifer agreed, reasoning that "it was a better place for [J.D.]." Tr., Vol. 1 at 146. Foster presented Jennifer with the paperwork necessary for him to obtain temporary guardianship on August 17, 2010. Foster and Jennifer then enrolled J.D. in the school in Foster's district and J.D. moved in with Foster soon thereafter. J.D. struggled at her new high school and she withdrew herself sometime in November or December 2010, planning to finish online. During this time, J.D. and Foster spoke about keeping their relationship secret until J.D. turned eighteen years old.

[10] J.D. testified that for approximately the next year, she did not have much contact with anyone other than Foster. They continued having sexual intercourse "[e]very day, probably." Tr., Vol. 1 at 77. The two also performed

oral sex on each other, Foster inserted his fingers into J.D.'s vagina, and they engaged in anal sex on more than one occasion. J.D.'s sister, J.B., would visit occasionally. J.B. testified that she witnessed J.D. and Foster kissing and holding hands, and she saw Foster's hand on J.D.'s leg. J.B. testified that one night when she was sleeping over at Foster's house, she heard moaning coming from Foster's bedroom as though Foster and J.D. were having sexual intercourse.

[11] The State also admitted into evidence photographs, a video, and J.D.'s notebook obtained from Foster's home during the service of a search warrant. There were several nude photographs of J.D. and in one photograph, taken on November 1, 2010, J.D. and Foster are nude, kissing in Foster's bathroom. In another, J.D. is performing oral sex on Foster. The video, dated July 18, 2012, just after J.D.'s seventeenth birthday, showed J.D. and Foster having sexual intercourse.

[12] The jury found Foster guilty of one count of sexual misconduct with a minor as a Class B felony; sexual misconduct with a minor as a Class C felony; child exploitation; and possession of child pornography. The jury found Foster not guilty of one count of sexual misconduct with a minor as a Class B felony and was unable to reach a verdict on the remaining two counts of sexual misconduct with a minor as Class B felonies. The State later dismissed the charges on which the jury did not reach a verdict.

[13]     Foster's sentencing was held on March 6, 2017. Foster presented the testimony of members of his family as well as the testimony of fellow soldiers with whom he served. After hearing testimony from the witnesses and that of Foster himself, the trial court stated:

> I have heard all of the aggravating and mitigating circumstances proposed by respective counsel and have considered each and every one of them, have not necessarily accepted each of them. Specifically I will note the Defendant's honorable service to our country. It's one of those anomalies that I'm not quite sure what to do with it. He's entitled to some credit for his service and placing himself in harms [sic] way to protect the country, which includes protecting its laws. I have heard how he served as a significant role model to a number of his folks. He had an opportunity to serve as a role model to a vulnerable child, and I picked those words carefully, to a vulnerable child and chose not to do so. Chose instead to pursue his own passions above her interest. I guess I'm not surprised that some folks consider her to be a manipulator, but I'm not convinced that I've heard evidence of that beyond the fact that she was vulnerable and in need of support, as some of you were who spoke for him, and he provided that support for each of you, but not for her. And I'm making these remarks – I've pretty much arrived at a sentence in my head, but I would hope to explain what I have seen from an impartial perspective. I know you all are in support of your friend, and I respect that. One of the things I've noted, and I don't mean to cause an issue for her going forward, but it's very clear based upon the testimony of the lady who received very good advise [sic] about how to handle a sexual problem in the military that you were well aware of sexual proprieties while at the same time violating them very seriously. There is a criminal history, it's not outrageous, it's a long way from being clear however.

Sentencing Transcript at 35-36.

[14]   The trial court sentenced Foster to ten years for Class B felony sexual misconduct with a minor, four years for Class C felony sexual misconduct with a minor, four years for child exploitation, and one year for possession of child pornography. The court ordered Foster's four year sentence for child exploitation be served consecutively to his ten year sentence for sexual misconduct with a minor and the remaining four year and one year sentences to be served concurrently. All told, Foster received a fourteen year executed sentence.[3] Foster now appeals.

# Discussion and Decision

## I. Sufficiency of Evidence

[15]   Foster contends the State presented insufficient evidence to support his convictions of sexual misconduct with a minor. Foster does not allege that the State failed to meet its burden regarding any of the underlying elements of the crimes; rather, Foster alleges that J.D.'s testimony was uncorroborated and so

---

[3] We note at sentencing, the trial court stated:

> So we're talking about an executed sentence of fourteen (14) years, and a further suspended sentence of four (4) years. If my arithmetic is correct we're talking about eighteen (18) years, fourteen (14), and four (4).

Sentencing Tr. at 37. The correct sentence as imposed by the trial court is fourteen years executed with no period suspended for an aggregate total of fourteen years executed. This error in calculation went uncorrected on the record at the sentencing hearing. However, the correct aggregate total is reflected in the Judgment of Conviction and the parties' briefs on appeal.

inherently improbable and equivocal that the incredible dubiosity rule should apply.

## A. Standard of Review

[16] Our standard of review for sufficiency claims is well settled. When evaluating a sufficiency of the evidence claim, we consider only the probative evidence and reasonable inferences most favorable to the verdict. *Love v. State*, 73 N.E.3d 693, 696 (Ind. 2017). We do not assess the credibility of the witnesses and we do not reweigh the evidence. *Id.* We will only reverse if no reasonable fact-finder could find the elements of the crimes proven beyond a reasonable doubt. *Id.*

## B. Incredible Dubiosity of J.D.'s Testimony

[17] The incredible dubiosity rule allows an appellate court to impinge upon the fact-finder's assessment of witness credibility when the testimony at trial was so "unbelievable, incredible, or improbable that no reasonable person could ever reach a guilty verdict based upon that evidence alone." *Moore v. State*, 27 N.E.3d 749, 751 (Ind. 2015). Our supreme court has explained the incredible dubiosity rule requires there be: "1) a sole testifying witness; 2) testimony that is inherently contradictory, equivocal, or the result of coercion; and 3) a complete absence of circumstantial evidence." *Id.* at 756.

[18] Foster admits he had sexual intercourse with J.D. but denies that it ever occurred before J.D.'s sixteenth birthday.[4] Foster attempts to invoke the incredible dubiosity rule regarding J.D.'s testimony and emphasizes there was no DNA evidence, no medical records of injuries, and no eye-witnesses of anything other than the undisputed fact that J.D. lived at his home.

[19] Our application of the incredible dubiosity rule could end where it begins: the requirement that there be but a "sole testifying witness." *Id.* at 757 (noting application of the incredible dubiosity rule "has been restricted to cases where there is a single testifying witness"). Here, J.D. was not the sole testifying witness. Rather, the State presented testimony from three other witnesses: J.D.'s sister, J.B.; J.D.'s friend, Newbauer; and J.D.'s mother, Jennifer.

[20] Although J.D. was the only eyewitness to the underlying sexual acts, as is common in cases involving sexual crimes, two witnesses, J.B. and Newbauer, corroborated important aspects of J.D.'s testimony. *See id.* at 757-58 (holding that the incredible dubiosity rule does not apply where there are corroborating witnesses). J.B. and Newbauer both testified that J.D. had discussed her sexual relationship with Foster during J.D.'s freshman year. Tr., Vol. 1 at 162; 135.

---

[4] Indiana Code section 35-42-4-9 (2007) provides:

    (a) A person at least eighteen (18) years of age who, with a child at least fourteen (14) years of age but less than sixteen (16) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits sexual misconduct with a minor, a Class C felony. However, the offense is:

        (1) a Class B felony if it is committed by a person at least twenty-one (21) years of age;

    * * *

J.B. testified that she saw J.D. and Foster together on numerous occasions and witnessed kissing, holding hands, and Foster's hand on J.D.'s leg. "[T]hey did pretty much everything together. They never really left each other's side." *Id.* at 162. J.B. also described how, on one occasion where she spent the night at Foster's home, she heard "moaning," leading her to believe Foster and J.D. were "having sex." *Id.* at 163.

[21] Foster's claims also fail the second factor of the incredible dubiosity rule, which is: "whether the witness' testimony is inherently improbable, contradictory, or coerced, resulting in the testimony being incredibly dubious." *Moore,* 27 N.E.3d at 758. Foster claims that J.D.'s testimony was contradicted and often unbelievable. In support of his argument, Foster cites to two examples surrounding Foster and J.D.'s initial meeting. First, Foster contends that J.D. testified that they met at a "Super Bowl party in February of 2010[,]" while Foster's brother, Kevin, testified that this meeting took place on Saturday, January 30, 2010. Brief of Appellant at 24. Second, Foster alleges that J.D.'s testimony regarding their initial meeting is unreliable because she admitted she was extremely intoxicated, became ill, and that she could not remember much from that night. Again, Foster points to Kevin's testimony that Foster was never alone with J.D.

[22] We find Foster's arguments to be unconvincing and largely irrelevant. First, we note these are not inconsistencies in J.D.'s testimony but contradictions with Foster's testimony or that of his brother. Second, whether the initial meeting between J.D. and Foster happened in late January or early February 2010 and

whether the party was a "Super Bowl party" or just a run-of-the-mill underage drinking party supervised by a twenty-eight-year-old, bears little weight on the substance of J.D.'s testimony. Third and finally, these examples are largely collateral and do not involve crimes for which Foster was convicted.

[23] As for Foster's allegation that J.D.'s testimony was unbelievable, a panel of this court has explained that in cases where we have found testimony to be inherently improbable or of incredible dubiosity, the cases involved either: 1) situations where the facts as alleged could not have happened as described by the victim and are inconsistent with the laws of nature or human experiences; or 2) the witness was so equivocal about the act charged that his or her uncorroborated and coerced testimony was riddled with doubt about its trustworthiness. *Rose v. State*, 36 N.E.3d 1055, 1061-62 (Ind. Ct. App. 2015).

[24] J.D.'s testimony does not satisfy either category. First, nothing in J.D.'s testimony was inconsistent with the laws of nature or human experience. Although J.D.'s allegations *should* be outside the realm of possibility, this court knows all too well that such allegations are both entirely possible and altogether too common. *See id.* at 1062 (noting "our case law is replete with horrid examples of children being sexually abused by adults").

[25] Second, J.D.'s testimony was unequivocal. J.D. testified that she engaged in sexual intercourse with Foster for the first time when she was fourteen years old and that she continued to see Foster three to five times a week, often doing "sexual things." Tr., Vol. 1 at 58. J.D. testified that in 2011, when she was

fifteen years old, the two would have sex "[e]very day, probably[,]" while the two lived together. *Id.* at 77. J.D. also testified that during this time the two performed oral sex on each other, Foster inserted his fingers into J.D.'s vagina, and they engaged in anal sex on more than one occasion.

[26] Next, Foster contends that J.D.'s testimony is unbelievable because she took more than five years to report the crimes and did so only while dealing with authorities on an unrelated matter. Foster emphasizes that J.D. only recently told her mother of their sexual relationship, that neither J.B. or Newbauer told anyone in authority of J.D.'s relationship, and that while J.D.'s testimony was vague on dates, times, and events, his own testimony was very detailed.

[27] Foster's arguments on this point do not render J.D.'s testimony unbelievable or incredibly dubious. Given the nature of J.D.'s relationship with Foster and the fact that she loved and cared for him, there is nothing unusual about J.D.'s disclosure of the relationship only after their separation. *Cf. Baumholser v. State,* 62 N.E.3d 411, 415 (Ind. Ct. App. 2016) (discussing admissibility of expert witness' testimony that victims of child molestation have a propensity to "delay disclosure of the event"), *trans. denied.* Similarly, there is nothing unusual about J.D.'s delayed disclosure of the relationship to her mother, whom she admitted to lying to repeatedly about Foster. Put simply, the jury was free to believe or disbelieve the testimony as it saw fit. *McClendon v. State*, 671 N.E.2d 486, 488 (Ind. Ct. App. 1996).

[28] Finally, we address the third factor of the incredible dubiosity rule: "a complete absence of circumstantial evidence." *Moore,* 27 N.E.3d at 756. A photograph electronically dated prior to J.D.'s sixteenth birthday shows Foster kissing J.D. with his hand on her buttocks and another depicts Foster and J.D. nude, kissing in Foster's bathroom. J.D.'s notebook, found in Foster's home, contained notes dated as early as March 2010 where J.D. wrote about loving Foster and placed their names inside of a heart. Other notes spoke of the two having sex multiple times over spring break of J.D.'s freshman year, of J.D. loving Foster, and that J.D. was aware of the illegality of Foster's acts. This, of course, is not all of the circumstantial evidence introduced by the State but the incredible dubiosity rule requires "a complete absence" of such evidence. *Id.* That is not the case presented here and "where there is circumstantial evidence of an individual's guilt, reliance on the incredible dubiosity rule is misplaced." *Id.* at 759.

[29] In sum, the incredible dubiosity rule does not apply to the case before us. Therefore, Foster's arguments regarding the sufficiency of the evidence can only be interpreted as an invitation to reweigh the evidence and judge the credibility of witnesses. We must decline Foster's invitation. *See Wright v. State,* 828 N.E.2d 904, 906 (Ind. 2005).

# II. Sentencing

## A. Abuse of Discretion

[30] Foster next alleges the trial court abused its discretion in his sentencing. Subject to the appellate courts' review and revise power, sentencing decisions are within the sound discretion of the trial court and we review only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007). An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.*

[31] In *Anglemyer*, our supreme court explained:

> One way in which a trial court may abuse its discretion is failing to enter a sentencing statement at all. Other examples include entering a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law.

*Id.* at 490-91.

[32] Specifically, Foster argues because the trial court failed to clearly identify which mitigating factors it accepted, we must assume the trial court rejected them all. Foster contends the following mitigating factors were presented on his behalf at sentencing: 1) Foster's remorse; 2) Foster's difficult childhood and abuse; 3) Foster's full-time employment; 4) hardship on Foster's son as the result of

extended incarceration; and 5) Foster's history of mental health issues. *See* Br. of Appellant at 27-28.

[33] The trial court is not required to accept a defendant's arguments as to what constitutes a mitigating factor or to give a mitigating factor the same weight as a defendant does. *Page v. State*, 878 N.E.2d 404, 408 (Ind. Ct. App. 2007), *trans. denied.* "An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record." *Anglemyer*, 868 N.E.2d at 493. Here, although the written sentencing order does not elaborate on the trial court's findings, the trial court made a lengthy oral statement at the sentencing hearing. *See Corbett v. State,* 764 N.E.2d 622, 631 (Ind. 2002) (noting that in reviewing a sentencing decision, we may consider both the written sentencing order and the oral sentencing statement). The trial court stated that it had "heard all of the aggravating and mitigating circumstances proposed by respective counsel and ha[d] considered each and every one of them, [but] ha[d] not necessarily accepted each of them." Sentencing Tr. at 35. Although a blanket assertion by the trial court that it has heard and considered all aggravating and mitigating factors will not always survive appellate review, we are satisfied that the trial court did not abuse its discretion in sentencing Foster.

[34] We begin by noting that we disagree with Foster's claim that because the trial court failed to clearly identify which mitigating factors it accepted, we must assume it rejected them all. The trial court did recognize Foster's military service as a mitigating factor and noted Foster's "honorable service to our

country[,]" and his service as a "significant role model to a number of his folks." Sentencing Tr. at 35. Indeed, by all accounts Foster's military service was exemplary and we, of course, commend Foster for his service. That said, Foster's military service lacks a direct mitigating link to the crimes committed and, as this court has previously noted, while a defendant's military service may be assigned mitigating weight, it is not necessarily a significant mitigating factor. *Massey v. State*, 955 N.E.2d 247, 260 (Ind. Ct. App. 2011).

[35] Next, Foster contends the trial court abused its discretion by not recognizing his remorse as a mitigating factor. Our supreme court has held that a trial court's determination of remorse is similar to a determination of credibility. *Pickens v. State,* 767 N.E.2d 530, 535 (Ind. 2002). Thus, a reviewing court will accept a trial court's determination regarding remorse where there is no evidence of impermissible considerations by the trial court. *Stout v. State,* 834 N.E.2d 707, 711 (Ind. Ct. App. 2005), *trans. denied.* Here, Foster only accepted responsibility for two counts, child exploitation and possession of child pornography. He adamantly denied the conduct for which he was convicted of sexual misconduct with a minor. Although Foster expressed remorse that J.D. had to "endure this process[,]" Sentencing Tr. at 33, that is not the same as accepting responsibility for his actions. Regardless, the trial court is in the best position to judge the sincerity of a defendant's remorseful statements. *Stout,* 834 N.E.2d at 711. Accordingly, we cannot say the trial court abused its discretion in declining to find Foster's remorse to be a mitigating circumstance.

[36] Foster also proposes that his difficult childhood should have been considered a mitigating factor. Foster presented evidence through his own testimony that he suffered from physical, verbal, and mental abuse by several family members as a child. As Foster himself admits, a difficult childhood may warrant little, if any, mitigating weight. *Rose v. State*, 810 N.E.2d 361, 366 (Ind. Ct. App. 2004). Given the limited evidence put forth by Foster and the factor's limited mitigating weight, we cannot say the trial court erred by rejecting this proffered mitigating factor.

[37] Similarly, Foster contends the trial court erred by failing to find his history of mental health issues as a mitigating factor. We disagree. Foster presented evidence that he had been diagnosed with Post-Traumatic Stress Disorder, Bi-Polar Disorder, and had suffered a traumatic brain injury as the result of an IED explosion in Afghanistan. In *Weeks v. State*, our supreme court explained that when considering the mitigating force of a defendant's mental health issue, a reviewing court should consider the inability of the defendant to control his behavior, any limited function, the duration of the illness, and the nexus between the illness and the crimes committed. 697 N.E.2d 28, 30 (Ind. 1998). Here, Foster offered no evidence concerning any of the foregoing considerations and simply proffered the diagnoses at sentencing. *See* Sentencing Tr. at 4-5. In light of Foster's perfunctory argument and his burden to establish mitigating evidence, we are not persuaded that the trial court abused its discretion.

[38] Foster also alleges that his employment was an appropriate, but overlooked, mitigating factor. As discussed above, the trial court considered Foster's military service as a mitigating factor and Foster advances essentially the same arguments regarding his employment, highlighting his mobilizations and deployments. Having already found a mitigating factor using the same facts, the trial court need not do so twice and did not abuse its discretion in declining to do so.

[39] Finally, Foster contends the trial court abused its discretion by failing to find the undue hardship to his dependent as a mitigating circumstance. Specifically, Foster alleges C.F. will experience an undue hardship as the result of his extended incarceration because C.F. will be forced to grow up without the benefit of his father or mother. We acknowledge C.F.'s unfortunate situation but ultimately conclude the trial court did not abuse its discretion in rejecting Foster's argument. As we have previously held, a trial court is not required to find a defendant's incarceration would result in undue hardship upon his dependents. *Allen v. State*, 743 N.E.2d 1222, 1237 (Ind. Ct. App. 2001), *trans. denied*. The record reveals that C.F. spent a significant period of time with Foster's parents while Foster served in the military and Foster often relied on others to care for C.F. Furthermore, "this mitigator can properly be assigned no weight when the defendant fails to show why incarceration for a particular term will cause more hardship than incarceration for a shorter term." *Weaver v. State,* 845 N.E.2d 1066, 1074 (Ind. Ct. App. 2006), *trans. denied.* Here, Foster

failed to establish why his period of incarceration would cause more undue hardship than a somewhat shorter period.

[40] In sum, we conclude that the trial court did not abuse its discretion in sentencing Foster and properly considered all the circumstances. Rather than overlooking the proposed mitigating factors, it is clear to us that the trial court determined the factors were insignificant and they therefore did not influence the sentence imposed. *See Anglemyer*, 868 N.E.2d at 493. The trial court also found significant aggravating circumstances which are unchallenged on appeal: 1) Foster's manipulation of a vulnerable child; 2) Foster's awareness of sexual proprieties; and 3) Foster's criminal history. Accordingly, the trial court did not abuse its discretion.

## B.  Inappropriate Sentence

[41] Foster also contends his aggregate sentence of fourteen years in the Indiana Department of Correction is inappropriate in light of the nature of the offenses and his character. The Indiana Constitution authorizes us to review and revise criminal sentences. Ind. Const. art. 7, §§ 4, 6. Indiana Appellate Rule 7(B) provides: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." We must "conduct [this] review with substantial deference and give 'due consideration' to the trial court's decision—since the 'principal role of [our] review is to attempt to leaven the outliers,' and not to achieve a perceived

'correct' sentence." *Knapp v. State,* 9 N.E.3d 1274, 1292 (Ind. 2014) (citations omitted), *cert. denied*, 135 S.Ct. 978 (2015).

[42] The defendant bears the burden of persuading us that his or her sentence is inappropriate. *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind. 2006). We consider "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State,* 895 N.E.2d 1219, 1224 (Ind. 2008).

[43] "[T]he advisory sentence is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Anglemyer,* 868 N.E.2d at 494. Foster received the advisory sentence for all four of his convictions. Only two of his sentences were ordered to run consecutively for an aggregate term of fourteen years executed. Notably, this sentence is significantly shorter than the maximum of thirty-eight and one-half years of incarceration he could potentially have received for his convictions. *See* Ind. Code §§ 35-50-2-5(a); 35-50-2-6(a); 35-50-2-7.

[44] Seemingly, Foster's only argument regarding the nature of his offense is that he is "certainly not the most culpable offender that the Indiana Court of Appeals scrutinized under this statute." Br. of Appellant at 34. While likely true, we nonetheless find Foster's actions reprehensible and exceedingly disturbing. Due to the circumstances surrounding Foster's relationship with J.D., her vulnerability, their difference in age and maturity, and the frequency and

duration of their sexual relationship, we find absolutely nothing about the nature of Foster's offenses to render his advisory sentences inappropriate.

[45] Turning to the character of the defendant, we again find nothing to render Foster's sentence inappropriate. First, even a minor criminal record reflects poorly on a defendant's character. *Rutherford v. State,* 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). Here, Foster had more than a minor criminal record, accumulating a juvenile record, as well as several misdemeanors and two prior felony convictions for residential entry and theft as an adult. Second, Foster presented testimony from several friends, family members, and fellow soldiers. Their testimony paints a picture of a mentor, a role model, and a caring, compassionate man. We do not diminish Foster's military service and, as noted above, commend him for it. However, we must agree with the trial court's view that Foster had the opportunity to serve as a role model to a vulnerable child and he chose instead to pursue his own passions. We find Foster's apparent disregard for the law perplexing given his upstanding military service, but nonetheless must acknowledge that his lengthy inappropriate relationship with a minor—a relationship he knew was inappropriate given his discussions with J.D. about keeping it secret—reflects poorly on his character.

[46] Finally, Foster's failure to accept responsibility for his actions also reflects poorly on his character. Although he makes much of the fact that he admitted to possession of child pornography and child exploitation, he did so only in light of nearly irrefutable evidence while adamantly denying conduct relating to his two convictions of sexual misconduct with a minor. Considering Foster's

criminal history and his failure to accept responsibility, nothing about Foster's character is sufficient to render his sentence inappropriate.

# Conclusion

[47] We conclude the incredible dubiosity rule is inapplicable to the facts presented and the evidence is sufficient to support Foster's convictions of sexual misconduct with a minor. The trial court did not abuse its discretion in sentencing Foster and his sentence was not inappropriate in light of the nature of his offenses or his character. Accordingly, we affirm in all respects.

[48] Affirmed.

Riley, J., and Pyle, J., concur.